Deborah B. Jardine ("the wife") and James Q. Jardine ("the husband") were divorced by a judgment entered on July 20, 2001. The wife appeals from a subsequent trial-court order implementing a provision of the judgment that had divided the parties' retirement accounts.
The judgment of divorce incorporated an agreement of the parties that was entered into after an extensive mediation.[1] Among other things, the judgment of divorce provided for the distribution of the parties' retirement accounts as follows: *Page 129 
 "18. The collective balances existing on the Husband's tax-deferred retirement/profit sharing accounts,[three accounts listed], along with the balances on deposit in the wife's tax-deferred retirement/profit sharing accounts, [two accounts listed] shall be determined as of June 30, 2001, and the Wife is hereby awarded a sum equal to forty-five percent (45%) of the collective total minus the current balances on her above identified accounts, so that the Husband receives fifty-five percent (55%) and the wife receives forty-five percent of the total amount. . . . The Circuit Court shall expressly reserve jurisdiction to enter all necessary and required orders, including a QDRO [Qualified Domestic Relations Order], to perfect the transfer of the funds. Counsel for the [husband] shall prepare all necessary orders to perfect the agreed transfer of funds."
For reasons not fully explained in the record, the wife did not send to the husband's attorney the statements from her retirement accounts that were necessary for preparation of the Qualified Domestic Relations Orders ("QDROs") needed to effect the distribution of funds to the wife. In December 2001, the husband's attorney sent a letter requesting the statements, but the statements were never sent to him. The husband's attorney never followed up; neither did the wife or her attorney. The investments in the parties' retirement accounts declined significantly in value after June 30, 2001, apparently as a result of market conditions.[2]
For a period of approximately two and one-half years following the entry of the divorce judgment, the parties vigorously litigated a large number of issues relating to and arising out of their divorce. The first filing by either party in this regard was some seven months after the divorce judgment was entered. On February 20, 2002, the wife filed a motion for a rule nisi seeking to hold the husband in contempt for nonpayment of alimony and child support. During the next two years, the parties filed numerous pleadings and related motions, and responses to those pleadings and motions, that sought, among other things, to change custody of the parties' minor children, both pendente lite and permanently; to obtain psychiatric and medical testing of one party or the other; to enforce the husband's obligation to pay child support; to increase and/or redirect the amount of child support payable by the husband; to require the husband to pay additional amounts toward the private-school education of one of the parties' daughters; to terminate alimony because *Page 130 
of the wife's alleged cohabitation; and to hold the husband in contempt. As part of this litigation, discovery, including interrogatories, depositions, and subpoenas to third parties, was pursued or attempted, and in some instances met with motions to quash or for protective orders. During this period, the court entered orders addressing some of the matters raised by the parties.
On September 30, 2002, the wife filed an amendment to her motion for a rule nisi in which she sought to enforce provisions of the divorce judgment obligating the husband to pay private-school tuition, to maintain a life insurance policy securing his obligation to pay rehabilitative alimony, and to maintain a $200,000 life insurance policy securing his child-support obligations. This motion also included a request for implementation of paragraph 18 of the divorce judgment.
Hearings were scheduled from time-to-time on all outstanding issues, including those raised by the wife's September 30, 2002, motion. Those hearings were postponed at the request of the wife on one occasion, at the request of the husband on at least one occasion, and with the mutual agreement of the parties on several other occasions.
On October 21, 2003, the trial court heard testimony from the parties and others, and arguments of counsel, relating to a number of issues raised by the above-described pleadings and motions. Among other things, the trial court addressed the wife's request for implementation of paragraph 18. The court explained on the record at the hearing that it construed paragraph 18 to require each party to bear a pro rata share of the fluctuations in the market value of the retirement accounts after the date of the judgment of divorce. On November 3, 2003, the trial court entered a written order addressing the issues raised in the October 21, 2003, hearing; as to the issue of the retirement accounts, the court stated:
 "With respect to the Qualified Domestic Relations Order [(QDRO)] as set out in paragraph 18 in the agreed Judgment of Divorce, the Court advised the attorneys and does hereby order that the [QDRO] shall be divided in the ratio agreed with the [wife] getting 45% and the [husband] getting 55%. This will require that the parties calculate the fluctuation of the market portfolio value from the date of the Judgment of Divorce to now and subtract any contributions which have been made after the date of the divorce and the contributions relatives value at the date of the [QDRO]."
Both parties filed postjudgment motions. On January 27, 2004, the trial court entered an amended order that determined that the valuation of the retirement accounts as of December 31, 2003, minus any postdivorce contributions, accurately reflected the postdivorce earnings and losses of the retirement accounts; the trial court ordered that a QDRO reflecting that valuation be prepared and submitted to the court by January 31, 2004. The wife filed a timely appeal.
The wife contends that the trial court modified the judgment of divorce more than 30 days after its entry. The wife argues that paragraph 18 of the divorce judgment was unambiguous and clearly required the wife to receive a sum certain based on the valuation of the retirement balances as of June 30, 2001. The husband, on the other hand, contends that the provision was ambiguous and that the trial court's order was necessary to effect the intent of the parties.
 "`A court cannot modify property provisions [in divorce judgments], except to correct clerical errors, after 30 days *Page 131 
from the final judgment.' Further, `[b]arring fraud and duress, . . . a property settlement agreement incorporated into a divorce decree is final and not modifiable.' Additionally, `divorce decrees are to be construed like other written instruments, and, if there is any uncertainty, the court must construe them so as to express the intent of the parties.
Such intent can be derived from the provisions of the agreement.'
 "`Whether an agreement is ambiguous is a question of law for the trial court. When the agreement is reasonably susceptible to more than one meaning, an ambiguity exists. The instrument is unambiguous if only one reasonable meaning clearly emerges. The words of an agreement are to be given their ordinary meaning, and the intention of the parties is to be derived from the provisions of the contract.'"
Ex parte Littlepage, 796 So.2d 298, 301 (Ala. 2001) (emphasis added; citations omitted).
Consistent with the foregoing principles, our cases hold that a trial court has the inherent authority to interpret, implement, or enforce its own judgments. E.g., Hallman v. Hallman,802 So.2d 1095, 1098 (Ala.Civ.App. 2001). In Filer v. Filer,502 So.2d 698, 700-01 (Ala. 1987), the trial court was held to have the inherent authority to interpret, implement, and enforce its order providing for the sale and division of a marital home, in light of postjudgment changes in the valuation of the home that resulted in proceeds of the sale being less than contemplated by the judgment. See also, e.g., Garris v. Garris, 643 So.2d 993,995 (Ala.Civ.App. 1994) (holding that the trial court could clarify and enforce its judgment as necessary to effect the unspoken intent of that judgment). The trial court's authority is not, however, "so broad as to allow substantive modification of an otherwise effective and unambiguous final order." George v.Sims, 888 So.2d 1224, 1227 (Ala. 2004).
Whether a settlement agreement or a resulting divorce judgment is ambiguous is a question of law for the trial court. Wimpee v.Wimpee, 641 So.2d 287, 288 (Ala.Civ.App. 1994) (explaining also that "[w]hen a trial court adopts a separation agreement, it is merged into the final judgment of divorce").
In Mayhan v. Mayhan, 395 So.2d 1022 (Ala.Civ.App. 1981), the Court of Civil Appeals stated:
 "We concur with the husband that a divorce judgment dividing property between the parties is not subject to modification as to such property division on account of changed conditions. However, the 1980 judgment did not modify the 1979 agreement and judgment. The [1979] agreement authorized an equal division of [the parties'] equity in the property should the house be sold and no alteration as to such provision was made by the latest judgment. The [1979] agreement was ambiguous since it did not state how, when, by whom or in what manner the house would be sold, and the [1980] judgment clarified such matters."
Mayhan, 395 So.2d at 1023 (citations omitted). As the court further explained: "For the purposes of appeal, the 1979 divorce judgment was final; yet, it was also interlocutory in nature `insofar as necessary to implement or enforce the provisions as to final disposition of the property by sale and division of the proceeds.'" Mayhan, 395 So.2d at 1024.
In Haney v. Haney, 50 Ala.App. 79, 277 So.2d 356 (Civ. 1973), the Court of Civil Appeals held that where one party,unanticipated by the trial court's final judgment, *Page 132 
failed to pay the mortgage payments with respect to the marital home, the trial court had jurisdiction to order the home sold, even though the requirement for the sale of the home was not set forth in the original agreement and divorce judgment. In a statement that is instructive for present purposes, the appeals court explained that the parties' original divorce agreement and resulting judgment "was final only under the circumstancesexisting at the time, but [was] subject to modification for thepurpose of implementing" the result intended by that judgment.50 Ala.App. at 81, 277 So.2d at 357 (emphasis added).
Similarly, at the time the divorce judgment was entered in the present case, neither the parties nor the trial court anticipated a material delay in the implementation of paragraph 18 of that judgment. As a result, that judgment was "ambiguous" to the extent that it did not state how the parties' retirement accounts were to be divided in the event of a delay of execution during which the values of the accounts at issue declined to the point that the total value of the accounts as of June 30, 2001, was no longer available so as to enable the wife to receive 45% of that value and the husband to receive 55% of that value.
This court's opinion in Garris v. Garris, 643 So.2d 993, also is instructive. In Garris, the parties were divorced by a judgment entered in February 1992. The judgment recognized the wife's interest in certain individual retirement account investments accumulated by the husband during the marriage. In addition, the judgment ordered that "the remaining liquid assets be divided equally after the payment of certain debts."643 So.2d at 994. The judgment did not, however, specifically address the tax and penalty consequences of an early withdrawal of funds from the husband's retirement accounts. In the same way, the judgment at issue in the present case did not specifically address the proper division of the retirement accounts of the parties in the event that the aggregate value of those accounts as of June 30, 2001, was no longer available for a 55/45 division at the time the division was eventually made.
In Garris, upon the withdrawal of funds from the husband's retirement accounts, a penalty and tax liability was incurred. The husband filed a petition for what he called a "modification," seeking an order requiring the wife to be responsible for one-half of the tax consequences incurred as the result of the court-ordered early withdrawals from his retirement accounts. The wife challenged this order on appeal. This court relied on the fact that the underlying intent of the judgment was to equally divide the parties' assets even though the payment of taxes was not contemplated in the judgment:
 "[A]lthough the [husband's] motion [was] entitled as one for modification, the actual relief sought [was] for the trial court to clarify and enforce its original judgment, which `equally divided' the remaining funds. For appeal purposes, the divorce judgment was a final judgment; however, it also continued to be interlocutory in nature in the event it became essential to augment, refine, clarify, or enforce provisions regarding the final disposition of property and the division of the proceeds. Mayhan v. Mayhan, 395 So.2d 1022 (Ala.Civ.App. 1981).
 "In the case sub judice, the original divorce judgment ordered the husband to liquidate the IRA [individual retirement account] assets, pay certain debts, and equally divide the remaining proceeds between the parties. Inherent in an equal division of the proceeds is the equal division of costs to obtain the `remaining *Page 133 
liquid assets.' When the trial court subsequently entered a judgment against the wife for one-half of the taxes and penalties incurred, it `did no more than enforce the original judgment, as it was empowered to do.' Filer v. Filer, 502 So.2d 698, 701 (Ala. 1987). Although the trial court lacked jurisdiction to modify the original judgment, it had the authority to clarify and enforce its original judgment to the extent of ensuring that the funds remaining be `equally divided' between the parties as intended by the original divorce judgment."
643 So.2d at 995 (emphasis added). In the same way, the trial court in the present case was fully within its authority to determine what was intended by the original divorce judgment with respect to a circumstance not explicitly addressed by that judgment.
The Wisconsin Supreme Court dealt with a similar issue in the case of Washington v. Washington, 234 Wis.2d 689,611 N.W.2d 261 (2000). In that case, the trial court expressly awarded each party to a divorce a specific dollar amount of value from the husband's pension plan. The judgment was omissive, however, as to what distribution was to be made of any interest or appreciation in the pension plan between the date of the entry of the judgment and the ultimate payment of the pension funds, which was anticipated to be approximately 21 years after the date of the divorce judgment. The trial court granted a motion by the wife to amend the judgment to state that it was the court's intention that the parties share proportionally in any appreciation or interest in the pension plan assets between the date of the judgment and the distribution of those assets.
On appeal, the Wisconsin Supreme Court held that "the silence in the final division of the property created an ambiguity about the allocation of appreciation and interest on the shares of the pension in light of the equal division of the property."234 Wis.2d at 698, 611 N.W.2d. at 266. Likewise, the silence of the trial court's judgment in the present case creates an ambiguity about the allocation of any shortfall in the value of the parties' retirement accounts. To that extent, the judgment inWashington, and, similarly, the judgment in the present case, was subject to interpretation and enforcement by the court that entered that judgment.
The following analysis by the Wisconsin Supreme Court therefore is persuasive, particularly as it relates to (1) the court's acknowledgment that language in a judgment that is unambiguous on its face can become ambiguous when considered in the context of postjudgment factual developments not anticipated by that language, and (2) the court's discussion of Dewey v. Dewey,188 Wis.2d 271, 525 N.W.2d 85 (Ct.App. 1994):
 "A divorce judgment that is clear on its face is not open to construction. In contrast, if a divorce judgment is ambiguous, construction is allowed. Divorce judgments are to be construed as of the time of entry and in the same manner as other written instruments. . . .
 "Ambiguity exists when the language of the written instrument is subject to two or more meanings, either on its face or as applied to the extrinsic facts to which it refers. . . .
 ". . . The line between impermissible modification and revision on the one hand and permissible construction and enforcement of an ambiguous final division of property on the other hand may in some cases be difficult to discern. Nevertheless, the statute and the case law make the distinction between the competing interests of finality of judgments and the need for circuit courts to *Page 134 
have the power to effectuate their judgments, including ambiguous judgments.
 "Numerous divorce cases demonstrate that after a final division of property, problems may arise that require the circuit court to construe a final division of property in a divorce judgment, in order to effectuate the judgment. For example, in Mathewson v. Mathewson, 135 Wis.2d 411, 400 N.W.2d 485 (Ct.App. 1986), three years after a final division of property in a divorce judgment the parties disputed the division of the proceeds of the sale of the parties' real estate. The judgment was silent on the allocation of the expenses of the sale and the interest due to the husband under the divorce judgment. The court of appeals ordered the circuit court to make a finding regarding the parties' obligations to each other on the sale. Mathewson, 135 Wis.2d at 418-19, 400 N.W.2d 485.
 "In Dewey v. Dewey, 188 Wis.2d 271, 525 N.W.2d 85
(Ct.App. 1994), two years after the final division of property in a divorce judgment the husband retired and began receiving pension benefits. The wife moved the circuit court for an order requiring the husband to execute documents to divide the pension as provided by the judgment. The husband maintained that under the divorce judgment he owed his wife a sum of money rather than an interest in the pension
and his debt to her was discharged by bankruptcy. The court of appeals upheld the circuit court's construction of the judgment as giving the wife a 50% property interest in the pension at the time of the divorce that was not dischargeable in bankruptcy.
 "In Schultz v. Schultz, 194 Wis.2d 799, 535 N.W.2d 116 (Ct.App. 1995), the final division of property in a divorce judgment gave the husband a right of first refusal if the wife `desires to sell, assign, or transfer' the family home within 10 years of the divorce. The wife died three years after the divorce, still owning the home at the time of her death. The husband asserted that the wife's death triggered his right of first refusal; the wife's estate disagreed. The husband filed a motion with the circuit court to enforce his alleged right of first refusal. The circuit court concluded that although the judgment spoke only of sale, assignment or transfer and was silent about whether the right of first refusal was against the wife personally or ran with the land,[3] the correct construction of the judgment was that the right of first refusal ran with the land. The circuit court reasoned that any other construction would in effect repeal a central part of the judgment that recognized the husband's interest in the home.
 "On appeal by the estate, the court of appeals concluded, as a matter of law, that the divorce judgment was ambiguous and that the circuit court was clarifying, not modifying, the judgment. Schultz, 194 Wis.2d at 809, 535 N.W.2d 116. The Schultz case has been cited and followed in other decisions of the court of appeals.
". . . .
 "We conclude that [the applicable statute] does not bar construction of an ambiguous final division of property in a divorce judgment. [The statute] grants power to the circuit courts to effectuate a divorce judgment by construing an ambiguous provision in a final division of property, and the case law demonstrates that circuit courts have exercised this *Page 135 
power with the approval of this court and the court of appeals."
Washington, 234 Wis.2d at 698-701, 611 N.W.2d at 266-67
(emphasis added; footnotes omitted). The Wisconsin Supreme Court then went on to cite Garris v. Garris and another Alabama case to explain that its decision was
 "consistent with decisions of other states that also have statutory prohibitions against modifying property divisions in divorce judgments. See, e.g., McGee v. McGee, 742 So.2d 193, 194 (Ala.Civ.App. 1999) (court's order regarding division of `antiques' was clarification of ambiguous provision and not impermissible modification); Garris v. Garris, 643 So.2d 993 (Ala.Civ.App. 1994) (court's failure to provide for tax consequences of IRA [individual retirement account] investments left original divorce order ambiguous and subject to permissible clarification and enforcement with new order); Ford v. Ford, 30 Ark.App. 147, 783 S.W.2d 879, 880-81
(1990) (recognizing court's inherent power to correct judgments where necessary to reflect intent of judgment, even a property division in a divorce judgment); Echols v. Echols, 900 S.W.2d 160, 162-63
(Tex.Ct.App. 1995) (court's order awarding ex-wife money was not impermissible modification of divorce judgment but rather clarification of judgment made ambiguous by facts not anticipated by court's original judgment)."
234 Wis.2d at 701 n. 14, 611 N.W.2d at 267 n. 14.
We conclude that the trial court did not err in concluding that the intent of the judgment was to make a 55/45 division between the parties of their retirement accounts. We also conclude that the trial court did not err in its 2003 orders in requiring the distribution amounts to be based on a valuation determined shortly before the eventual distribution. That is a logical implementation of the provisions of paragraph 18. It is also supported by testimony given at the October 21, 2003, hearing.
The dissenting opinion is predicated on the view that there is no ambiguity in paragraph 18 of the divorce judgment and, therefore, that there was no room for the trial court to enforce that clause in the way in which it did. The dissenting opinion fails to concede any ambiguity arising from the fact that the clause in paragraph 18 that awards the wife 45% of the combined value of the retirement assets is followed immediately by explanatory language: "so that the husband receives fifty-five percent (55%) and the wife receives forty-five percent (45%) of the total amount." The dissenting opinion also fails to concede any ambiguity arising from an attempt to apply this latter clause to the postjudgment facts that have now developed.
Again, the problem here is that the parties failed to execute the judgment in a timely fashion. As a result, the judgment was no longer susceptible to execution in the manner contemplated by the judgment itself — namely, an award to the husband of 55% of the combined market value of the retirement-account assets as of June 30, 2001, and an award to the wife of 45% of the combined market value of the retirement-account assets as of June 30, 2001. Thus, the judgment necessarily is "ambiguous" in the sense that it does not tell the reader what result should obtain under the new facts that developed after the judgment had been entered.[4] *Page 136 
So viewed, the problem here might more efficiently be labeled as an unanticipated "impossibility of performance" of the trial court's judgment. Clearly, in situations where a trial court's judgment is not susceptible to performance as written, courts have the authority and the duty to interpret, implement, and enforce and even to augment those judgments so as to effectuate the court's original intent (even if that intent was not specifically and explicitly stated in the judgment because the court saw no need to attempt to address the infinite variety of possible circumstances that might exist in the event its judgment was not implemented promptly).
The dissent bases its contention that there is no uncertainty as to the proper application of paragraph 18 by taking the position that the second clause of the sentence at issue, which provides for the wife to receive 45% of the aggregate value of the accounts as of June 30, 2001, is controlling. In essence, the dissent opines that this clause overrides the clause that follows and that explains that the husband is to receive 55%, and the wife 45%, of the parties' combined retirement accounts. The dissenting opinion's position in this regard is, in turn, based on the premise that paragraph 18 is not a paragraph by which the trial court meant to divide the parties' retirement accounts, per se. Rather, according to the dissent's view, paragraph 18 is simply a paragraph by which the trial court makes an additional cash award — i.e., alimony in gross — that is merely measured against the value of the parties' combined five retirement accounts as of a specified date. The dissent arrives at this conclusion by focusing on the inclusion by the trial court in the second clause of the phrase "sum equal to" in describing the wife's award in relation to the retirement accounts.
When paragraph 18 is read (a) in its entirety and (b) in parimateria with and in juxtaposition to the other provisions of the divorce judgment — including paragraph 15, which the trial court included in the divorce judgment as an express provision for the payment by the husband to the wife of $340,000 in gross alimony — it becomes apparent that the dissent's view of paragraph 18 is strained and too narrow. Indeed, the far more obvious explanation of paragraph 18 is that it was included in the divorce judgment for precisely the purpose of effecting a division of the parties' retirement accounts, per se, as permitted under § 30-2-51, Ala. Code 1975, not to award a sum certain of cash to the wife that the trial court just happened to decide to measure against the aggregate value of the parties' five separate retirement accounts as of a specified date. The wording of paragraph 18 and the relationship of paragraph 18 to the remainder of the judgment seems to make this clear enough. Even if it did not, paragraph 18 specifically provides for the use of a QDRO, a mechanism prescribed by federal law for the specific purpose of enabling state courts to divide qualified pension plans and other retirement accounts. Further, both the husband and wife testified that, in the mediation that led to their divorce judgment, they agreed on a division of their retirement accounts.
In sum, the dissent's view of paragraph 18 ignores the wording of that paragraph taken as a whole, how that paragraph fits into the scheme of the other provisions for alimony and property division (including the alimony-in-gross provision of paragraph 15) of the divorce judgment, that *Page 137 
paragraph's explicit use of the QDRO mechanism, and the testimony of the parties. The dissent chooses to weigh more heavily than all of the foregoing factors combined the fact that the trial judge chose a turn of phrase, "sum equal to," to express himself in paragraph 18. Based on this short phrase, we are asked to conclude that paragraph 18 is not at all about the division of the parties' retirement accounts, but instead is merely an elaborate mechanism to describe a sum of cash to be awarded outright to the wife. This interpretation places too much weight on what is, at most, imprecise terminology, while ignoring the other aspects described above.[5]
Even if we are wrong and paragraph 18 is susceptible to the dissent's interpretation, we simply do not see how it can be said, as the dissent necessarily does, that paragraph 18 cannot reasonably be construed in any other way. That is, if paragraph 18 of the judgment was intended merely to make another alimony-in-gross award that would add to the alimony-in-gross award already made in paragraph 15, and was not intended to divide the parties' retirement accounts, per se, the parties and the trial court unquestionably did not choose a manner of doing this that unambiguously communicates that intent. If then paragraph 18 is, at a bare minimum, susceptible to either the interpretation given it by this opinion or the interpretation given it by the dissenting opinion, it was for the trial court to interpret its own judgment by choosing between those two possible meanings. See, e.g., Hallman, 802 So.2d at 1098.
On the basis of the foregoing, the judgment of the trial court is due to be affirmed.
AFFIRMED.
THOMPSON, PITTMAN, and BRYAN, JJ., concur.
CRAWLEY, P.J., dissents, with writing.
[1] During the divorce proceeding, both parties were represented by counsel and had access to the records necessary to evaluate the agreement.
[2] There is no suggestion in the record that either party was responsible for the decline in value of the retirement accounts. Both parties were sophisticated investors; the wife had previously worked as a stockbroker in her family's firm.
At one juncture, the dissent comments that "the husbandreceived" a certain amount from the parties' retirement accounts and that "the wife should have received" a certain amount from the parties' retirement accounts. 918 So.2d at 139. The reality is that the division of the retirement accounts never occurred. Neither the husband nor the wife ever received anything as a result of paragraph 18 of the divorce judgment. Any implication in the dissenting opinion that the wife was wronged by some delay on the part of the husband does not comport with the facts in evidence. Moreover, the evidence supports the trial court's apparent conclusion that, following the entry of the divorce judgment, both parties failed to adequately pursue enforcement of paragraph 18. As a result, the total value of their combined retirement accounts went down from their June 30, 2001, value and it therefore became impossible for both the husband and the wife to receive the full measure of their respective percentages (55% for the husband and 45% for the wife) of the retirement accounts as prescribed by paragraph 18. There simply was no longer enough value to go around.
[3] Similarly, the judgment here is silent as to what should be done if the total value existing on June 30, 2001, is not available at the time of actual division.
[4] As the Washington case explains, a judgment may be considered ambiguous "either on its face or as applied to extrinsic facts to which it refers." 234 Wis.2d at 698-99,611 N.W.2d at 266 (footnote omitted). Of course, trial-court orders rarely, if ever, indicate what to do if they are not executable because of a material delay in their implementation, because trial-court judgments generally presume prompt implementation.
[5] In addition, the dissent's view of paragraph 18 raises the specter of trial courts' circumventing the restrictions of §30-2-51, Ala. Code 1975, by making alimony-in-gross awards based on the value of retirement accounts, while technically leaving those retirement accounts in the hands of their original owners. In this context, the result urged by the dissent arguably constitutes a violation of the 50% restriction in § 30-2-51
because the wife would receive more than 50% of the value of the husband's retirement accounts as of the date of the distribution.