On Application for Rehearing

THOMPSON, Presiding Judge.
The opinion of September 25, 2009, is withdrawn, and the following is substituted therefor.
Vilma G. Romer (“the wife”) appeals from an order of the Madison Circuit Court vacating a qualified domestic relations order (“QDRO”) it had entered pursuant to its judgment divorcing John H. Romer (“the husband”) and her (appeal no. 2080353), as well as from a QDRO subsequently entered by the trial court (appeal no. 2080498). This court- consolidated the wife’s appeals. For the reasons stated herein, we dismiss appeal no. 2080353, we reverse the trial court’s order vacating its original QDRO, we vacate the trial court’s subsequently entered QDRO, and we remand the cause.
On July 24, 2006, the wife filed an action seeking a divorce from the husband. In January 2008, the husband and the wife reached an agreement regarding the division of their marital property. Their agreement, which was reduced to writing, provided, among other things, that the wife would receive “[t]he sum of SIX HUNDRED THOUSAND AND 00/100 ($600,000) DOLLARS from the Husband’s retirement account[ ] accumulated through his employment with Radiology of Huntsville, P.C.” The agreement provided that the husband was to receive “[t]he balance remaining of any retirement account[ ] accumulated through his employment with Radiology of Huntsville, P.C. after the award of $600,000 to the Wife as noted above.” The husband executed the agreement on January 28, 2008; the wife executed the agreement on March 14, 2008. On March 26, 2008, the trial court entered a judgment divorcing the parties. The judgment incorporated the parties’ written agreement.
On September 24, 2008, the trial court entered a QDRO for the purpose of implementing that portion of its judgment awarding the wife $600,000 from the husband’s retirement account.[1] On October 21, 2008, the husband filed a motion to alter or amend the QDRO. The husband asserted that he had agreed to pay the wife a larger amount of monthly alimony than he believed she was entitled to be *517 cause, at the time the parties entered into their agreement in January 2008, the amount to be awarded to the wife from the husband’s retirement account constituted less than half of the total funds in that account. He asserted that, since the date of the divorce judgment, his retirement account had decreased in value from approximately $1,700,000 to $1,150,000. He argued that the parties’ intent at the time they entered into the agreement dividing the marital assets was that the wife would receive $600,000 from the retirement account as of the date of the divorce judgment, “together with all earnings and losses thereof from that date until the date of distribution.” He also indicated that he had been informed by counsel for the retirement account that the trial court’s QDRO did not comply with the requirements of federal law and needed to be amended to correctly identity the retirement account and to specify how payment was to be made to the wife from the retirement account.
In her response to the husband’s motion to alter or amend the QDRO, the wife argued that the husband’s motion sought, in actuality, an amendment of the divorce judgment; she argued that the trial court no longer had jurisdiction to make such a modification and that, therefore, the husband’s motion was due to be dismissed. She contended that the terms of the divorce judgment, and of the parties’ agreement incorporated therein, were clear and unambiguous in their requirement that the husband pay to her a sum certain from his retirement account rather than a percentage of his retirement account. She denied that the parties’ intent was to burden her $600,000 award from the retirement account with the earnings and losses from the date of the judgment until the date of distribution.
The trial court held a hearing on the husband’s motion at which it received ore tenus evidence. On December 24, 2008, the trial court entered an order granting the husband’s motion and vacating its QDRO. Relying on this court’s decision in Buchanan v. Buchanan, 936 So.2d 1084 (Ala.Civ.App.2005), the trial court found that its judgment of divorce as well as its QDRO were “inherently ambiguous” because they did not mention the impact of market fluctuations on the value of the husband’s retirement account. The trial court found that the delay in the entry of the QDRO was the fault of counsel for both of the parties but that counsel for the wife was more responsible for the delay. The trial court found that the parties’ intent was that the wife receive from the husband’s retirement account an amount equal to 35.5% of its value. The trial court ordered that a new QDRO be entered that reflected its findings. The wife filed a notice of appeal to this court from the December 24, 2008, order.
On January 26, 2009, the trial court entered a new QDRO that indicated that the wife’s interest in the husband’s retirement account was 35.5% of the value of the account. The order provided that it was the trial court’s intent that the parties bear proportionally the decrease in the value of the account since the date of the judgment divorcing the parties. The wife filed a timely notice of appeal from that order. This court consolidated the wife’s appeals.
We first address this court’s jurisdiction over the wife’s appeals. With some exceptions, this court’s appellate jurisdiction extends only to final judgments. Although most actions at law involve only a single final judgment (generally requiring the payment of money damages by, or the exoneration of, a defendant), equitable actions can and often do involve multiple *518 final judgments. In James v. Alabama Coalition for Equity, Inc., 713 So.2d 937 (Ala.1997), our supreme court wrote:
“ ‘Equity decrees may be partly final and partly interlocutory. A decree which ascertains and declares the rights of the parties and settles the equities is a final decree, although it provides for further proceedings under the direction of the court in order to carry the decree into effect. If there is a decree directing further proceedings under the direction of the court in order to make the final decree effective, such decree is interlocutory and remains within the control of the court because as to such decree and further proceedings thereunder the cause remains in fieri.’
“[Newton v. Ware,] 271 Ala. [444,] 450, 124 So.2d [664,] 670 [ (1960) ], quoted in Taylor [v. Taylor, 398 So.2d 267 (Ala. 1981),] and Sexton [v. Sexton, 280 Ala. 479, 195 So.2d 531 (1967) ].
“Even more significantly from the point of view of this case, ‘[i]n equity cases there can be more than one final judgment from which an appeal may be taken. ’ Norris v. Norris, 406 So.2d 946, 948 (Ala.Civ.App.1981) (emphasis added); see also Chadwick v. Town of Hammondville, 270 Ala. 618, 621, 120 So.2d 899, 902 (1960). This is so because ‘there may remain ... other matters in which the equities have not been settled or proceedings necessary to enforce the judgment previously entered. A court has inherent power to issue such orders or process as necessary to render its judgment effective.’ 406 So.2d at 948; Monroe v. Monroe, 356 So.2d 196 (Ala.Civ.App.1978).”
James, 713 So.2d at 945. Moreover, “ ‘orn-eases hold that a trial court has the inherent authority to interpret [or] implement ... its own judgments.’ ” Downs v. Downs, 978 So.2d 768, 771 (Ala.Civ.App. 2007) (quoting Jardine v. Jardine, 918 So.2d 127, 131 (Ala.Civ.App.2005)).
In the present case, the trial court’s March 26, 2008, judgment of divorce constituted a final judgment, in spite of the fact that a portion of the judgment required the subsequent entry of a QDRO for implementation. Franz v. Franz, 723 So.2d 61, 65 (Ala.Civ.App.1997). The trial court’s QDRO of September 24, 2008, likewise constituted a final judgment, because it resolved all the outstanding issues between the parties related to the implementation of the trial court’s divorce judgment. See James, 713 So.2d at 945; Ex parte DCH Reg’l Med. Ctr., 571 So.2d 1162, 1164 (Ala.Civ.App.1990) (“[T]he test of a judgment’s finality is whether it sufficiently ascertains and declares the rights of the parties.”).[2]
The trial court’s order of December 24, 2008, setting aside its September 24, 2008, QDRO was not a final judgment and does not support the wife’s first appeal because that order effectively reopened the issue of implementation of the trial court’s divorce judgment; the December 24, 2008, order called for the entry of a new QDRO for the purpose of implementing the divorce judgment. As such, the *519 wife’s first appeal, appeal no. 2080353, is due to be dismissed as having been taken from an interlocutory order of the trial court. See White v. Drivas, 954 So.2d 1119, 1121 (Ala.Civ.App.2006) (“A nonfinal order will not support an appeal.”). For the reasons that the trial court’s September 24, 2008, QDRO was a final judgment, however, the trial court’s January 26, 2009, QDRO, purporting to implement its divorce judgment, was a final judgment that fully supports the wife’s second appeal. As a result, although this court lacks appellate jurisdiction over appeal no. 2080353, this court has appellate jurisdiction over appeal no. 2080498, which encompasses the issues the parties address on appeal. Thus, we proceed to a review of the merits of the wife’s appeal.
As discussed below, the question before this court is whether the parties’ settlement agreement, incorporated into the trial court’s judgment divorcing the parties, was ambiguous and subject to interpretation by-the trial court in a later order. That question is one of law, which this court reviews de novo. Judge v. Judge, 14 So.3d 162, 165 (Ala.Civ.App.2009).
On appeal, the wife contends that the trial court erred when it concluded that the divorce judgment incorporating the parties’ settlement agreement was ambiguous with regard to the award to her from the husband’s retirement account. Because the judgment was free from ambiguity, she argues, the trial court improperly looked beyond the language employed in the judgment in determining what the parties’ intended with regard to that award.
In Judge v. Judge, supra, this court wrote:
“In R.G. v. G.G., 771 So.2d 490 (Ala.Civ.App.2000), this court stated:
“ ‘ “[A] settlement agreement which is incorporated into a divorce decree is in the nature of a contract.” Smith v. Smith, 568 So.2d 838, 839 (Ala.Civ.App.1990). A divorce judgment should be interpreted or construed as other written instruments are interpreted or construed. Sartin v. Sartin, 678 So.2d 1181 (Ala.Civ.App.1996). “The words of the agreement are to be given their ordinary meaning, and the intentions of the parties are to be derived from them.” Id. at 1183. Whether an agreement is ambiguous is a question of law for the trial court. Wimpee v. Wimpee, 641 So.2d 287 (Ala.Civ.App.1994). An agreement that by its terms is plain and free from ambiguity must be enforced as written. Jones v. Jones, 722 So.2d 768 (Ala.Civ.App.1998). An ambiguity exists if the agreement is susceptible to more than one meaning. Vainrib v. Downey, 565 So.2d 647 (Ala.Civ. App.1990). However, if only one reasonable meaning clearly emerges, then the agreement is unambiguous. Id. Finally, if a provision of an agreement is certain and clear, it is the duty of the trial court to determine its meaning, and the court’s determination is afforded a heavy presumption of correctness and will not be disturbed unless it is clearly erroneous. Id.’
“771 So.2d at 494. See also Ex parte Littlepage, 796 So.2d 298, 301 (Ala.2001); Van Allen v. Van Allen, 812 So.2d 1276, 1277 (Ala.Civ.App.2001); and Granger v. Granger, 804 So.2d 217, 219 (Ala.Civ. App.2001).
“Alabama appellate courts have stated that a court will not look beyond the four corners of a written instrument unless the instrument contains latent ambiguities. E.g., Martin v. First Nat’l Bank of Mobile, 412 So.2d 250, 253 (Ala. 1982). ‘[A] latent ambiguity is one that “appear[s] only as the result of extrinsic *520 or collateral evidence showing that a word, thought to have but one meaning, actually has two or more meanings.’” Meyer, 952 So.2d at 392 (citing 11 Richard A. Lord, Williston on Contracts § 33:40, at 816 (4th ed.2003)).”
14 So.3d at 165-66.
In Jardine v. Jardine, 918 So.2d 127 (Ala.Civ.App.2005), this court reviewed a judgment of divorce that, because of fluctuations in the markets, had become impossible to perform. The divorce judgment at issue, among other things, awarded the wife an amount equal to 45% of the parties’ retirement accounts and awarded the husband 55% of those accounts, with the balances in those accounts determined as of June 30, 2001. After the judgment was entered, but before appropriate QDROs were entered that could accomplish the division of the retirement accounts, the value of those accounts declined significantly. The parties engaged in substantial postjudgment litigation regarding the divorce judgment. One of the issues that arose was the effect of the decline in the value of the parties’ retirement accounts on the portion of the divorce judgment dividing those accounts. The trial court held that, in dividing the retirement accounts, both parties would bear the effects of the fluctuations in the value of the accounts.
The wife in Jardine appealed to this court, contending that the trial court’s order constituted a modification of the divorce judgment. She argued that she was entitled to an amount equal to 45% of the value of the parties’ retirement accounts as of June 30, 2001, which, she argued, was a sum certain that was not subject to modification based on changes in the values of the parties’ retirement accounts. This court held that the divorce judgment was ambiguous, and therefore subject to interpretation by the trial court, because the divorce judgment “did not specifically address the proper division of the retirement accounts of the parties in the event that the aggregate value of those accounts as of June 30, 2001, was no longer available for a 55/45 division at the time the division was eventually made.” 918 So.2d at 132. This court continued:
“Clearly, in situations where a trial court’s judgment is not susceptible to performance as written, courts have the authority and the duty to interpret, implement, and enforce and even to augment those judgments so as to effectuate the court’s original intent (even if that intent was not specifically and explicitly stated in the judgment because the court saw no need to attempt to address the infinite variety of possible circumstances that might exist in the event its judgment was not implemented promptly).”
918 So.2d at 136. Thus, this court affirmed the trial court’s interpretation of the divorce judgment.
In Buchanan v. Buchanan, 936 So.2d 1084 (Ala.Civ.App.2005), decided a few months after Jardine, this court again addressed an issue related to the division of a retirement account. In Buchanan, a judgment divorcing the parties incorporated an agreement of the parties that provided, among other things, that the wife would “ ‘receive, as of the date of the final [judgment], one-half (½) of the existing shares of Husband’s 401 (k) retirement account.’” 936 So.2d at 1085. Three years after the entry of the divorce judgment, the wife filed a motion to have the husband held in contempt for having failed to transfer to her her portion of his retirement account. At a hearing on the motion, evidence was introduced indicating that the husband’s retirement account had declined in value from approximately $77,000 at the time of the divorce judgment to $43,000. The trial *521 court held that the husband was required to transfer to the wife from his retirement account an amount equal to half of its value as of the date of the divorce judgment.
The husband in Buchanan appealed, arguing that the trial court, in its subsequent order, had awarded the wife 88.4% of the value of his retirement account when the divorce judgment had only provided for an award of 50% of his retirement account to the wife. Reversing the trial court’s order, this court wrote:
“A review of the previous decisions of this court and of cases from other jurisdictions indicates that when a divorce judgment awards a spouse a percentage share of a variable asset and the award is silent with respect to market fluctuations in the value of the asset before the time of distribution, the judgment is inherently ambiguous; if the spouses are equally responsible for the delay in distribution, each spouse assumes a proportionate share of any subsequent gains or losses in the asset until such time as the share is distributed, and that is true even if the judgment awards a spouse a percentage of the value of the asset on a specific date.”
936 So.2d at 1087. This court concluded that the trial court erred when it awarded the wife, in its subsequent order, half of the value of the husband’s account as calculated on the date of the entry of the divorce judgment. Id. at 1089.
The parties in this case argue at length in their briefs over whether this court’s holdings in Jardine and Buchanan support the trial court’s determination in the present case that the parties’ agreement dividing the marital assets was ambiguous •with regard to the division of the husband’s retirement account. We determine that they do not. Jardine involved a situation in which the parties’ agreement as to the division of their retirement accounts was “ambiguous” because it became impossible to perform once the values of the accounts changed. There is no such impossibility of performance alleged in the present case, and there is no basis on which to conclude that the parties’ agreement in the present case cannot be performed as written.
Buchanan, the case on which the trial court relied, presents a more interesting comparison, but we conclude that it likewise does not control the outcome of this appeal. Unlike the present case, the agreement at issue in Buchanan provided to the wife a percentage of the number of shares comprising the husband’s retirement account. Although the value of those shares was shown to have fluctuated between the date on which the divorce judgment was entered and the date of the hearing on the wife’s contempt motion, the agreement did not provide that either the number of shares to be awarded to the wife or the value of the retirement account in which the shares were held was to be valued as of a particular day. Instead, the agreement provided that the wife was to receive half of the shares in the husband’s retirement account as of the date of the divorce judgment. On appeal, half of the shares in that account at the time of the divorce judgment is exactly what this court held that the wife was entitled to receive, notwithstanding the valuation of those shares at the time of distribution.[3]
*522 In the present case, the husband and the wife agreed that the wife would receive $600,000 from the husband’s retirement account, with the husband to retain the remainder of the funds in the account after distribution of the $600,000 to the wife. The language the parties employed in their settlement agreement is not ambiguous. True, the parties did not set out in writing how gains and losses accruing to the husband’s account would be allocated between the parties. However, by setting forth a sum certain that was to be paid to the wife, the parties implicitly determined that the husband alone would bear the risk of any decrease in the value of his account or benefit from any increase in the value of his account. The parties were free to have allocated the risk of gains and losses otherwise, by, for example, expressing the distribution to the wife in terms of a percentage of the value of the retirement account at the time of distribution or by explicitly stating that the parties would bear their proportionate share of gains and losses accruing to the account between the date of the entry of the divorce judgment and the date of the distribution to the wife. This, however, they did not do. Instead, they wrote, in unambiguous terms, that the wife was to receive $600,000 from the husband’s retirement account. Because the language in the agreement was not ambiguous, the trial court was not permitted to construe the agreement by reference to material that was not contained within the four corners of the parties’ agreement. Judge, 14 So.3d at 165. In so doing, the trial court erred to reversal.
We recognize, as the husband points out in his appellate brief, that there is a line of cases from other jurisdictions with which our holding is in tension. See, e.g., Bitner v. Hull, 695 N.E.2d 181 (Ind.Ct.App.1998); Greenwood v. Greenwood, 746 A.2d 358 (Me.2000); and Duran v. Duran, 657 N.W.2d 692 (S.D.2003). Many of those cases are distinguishable from the present case.[4] Moreover, our research discloses a line of cases that fully support the conclusion at which we arrive. See, e.g., Harris v. Harris, 162 N.C.App. 511, 591 S.E.2d 560 (2004); Veidt v. Cook, (No. CA2003-08-209, June 21, 2004) (Ohio Ct.App.2004) (not published); In re Marriage of Knutson, 114 Wash.App. 866, 60 P.3d 681 (2003); and Schinner v. Schinner, 143 Wis.2d 81, 420 N.W.2d 381 (Ct.App.1988). Our review of all of those cases further convinces us that the language the parties employed in their settlement agreement is not ambiguous.
Based on the foregoing, we conclude that, because the parties’ agreement dividing their marital property was not ambiguous, the trial court was not permitted to go behind the plain language of that agreement in an effort to search out the parties’ intent with regard to the division of the husband’s retirement account. The trial court erred when it did so, and, as a result, we reverse the trial court’s December 24, *523 2008, order vacating its original QDRO; we vacate the trial court’s QDRO of January 26, 2009; and we remand the cause to the trial court.
2080353 — APPLICATION OVERRULED; OPINION OF SEPTEMBER 25, 2009, WITHDRAWN; OPINION SUBSTITUTED; APPEAL DISMISSED.
2080498 — APPLICATION OVERRULED; OPINION OF SEPTEMBER 25, 2009, WITHDRAWN; OPINION SUBSTITUTED; DECEMBER 24, 2008, ORDER REVERSED; JANUARY 26, 2009, JUDGMENT VACATED; AND CAUSE REMANDED.
PITTMAN and THOMAS, JJ, concur.
BRYAN, J., concurs specially.
MOORE, J., concurs in the result, without writing.

. QDROs are provided for under the federal Employment Retirement Income Security Act, 29 U.S.C. § 1001 et seq., and "facilitate the distribution of pensions and employee benefits that are subject to [the] provisions [of the act].” Duran v. Duran, 657 N.W.2d 692, 694 n. 1 (S.D.2003).

. Cf. Liberty Mut. Ins. Co. v. Greenway Enters., Inc., 23 So.3d 52, 56 (Ala.Civ.App.2009) ("Liberty Mutual did, however, timely file a notice of appeal from the December 12, 2007, judgment. That judgment constitutes a final judgment regarding the collateral issues of costs and attorney fees that will itself support an appeal. See James River Corp. v. Bolton, 14 So.3d 868, 871 n. 3 (Ala.Civ.App.2008) (holding that judgment establishing amount of attorney fees previously awarded is a final judgment). Hence, Liberty Mutual properly invoked this court’s jurisdiction to consider the propriety of that award." (footnote omitted)).

. It is true, as the husband in this case points out, that this court wrote in Buchanan that a judgment is "inherently ambiguous” when it awards a spouse a percentage of the value of an account on a specific date. The husband interprets that statement as providing that an award to a spouse from the other spouse's retirement account that does not account for future fluctuations in the value of the account is ambiguous, even if a sum certain is *522 awarded from that account. The language in Buchanan on which the husband relies, however, is dicta, i.e., was unnecessary to the resolution of that appeal, because, as previously noted, the spouse in Buchanan was awarded shares from the account and the judgment did not provide that those shares would be valued as of a particular date. As a result, that language has no bearing on the proper outcome of the present case. See Knight v. State, 273 Ala. 480, 486, 142 So.2d 899, 905 (1962).

. For example, the language of the divorce settlement agreement at issue in Greenwood indicated that the lump-sum payment to the wife from the husband's pension plan was equal to 50% of the value of that part of the pension plan constituting marital property. No such language introducing a percentage basis for the award from the husband's retirement account exists in the present case.