THOMPSON, Presiding Judge.
Glenda Hudson (“the wife”) appeals from the Walker Circuit Court’s denial by operation of law of her postjudgment motion, which amounted to the trial court’s refusal to enter two qualified domestic relations orders (“QDROs”) to effect the transfer of money from two accounts held by Emanuel Hudson (“the husband”) after the parties divorced.
The record indicates the following. The wife, who is an attorney, filed a complaint for a divorce in October 2004. On April 3, 2007, more than two years after the commencement of the action, the presiding judge of the Walker Circuit Court notified the Alabama Supreme Court that all of the circuit judges and district judges in the circuit had recused themselves from the case. On April 20, 2007, the Chief Justice of the Alabama Supreme Court assigned a retired circuit judge to preside over the action. On December 2, 2010, a hearing was held during which the parties announced that they had reached a settlement agreement. The agreement, which was read into the record at the hearing, provided in pertinent part:
“The parties agree that the [husband] has retirement funds in a thrift savings plan and also in a federal retirement *575 system and each party shall receive one-half those funds from today’s date, December 2, 2010. Each party agrees to execute all documents necessary to effect the transfer of the funds belonging to the [wife] and the parties agree the court may order all orders necessary to effectuate such transfer.”
However, the trial court did not immediately enter a divorce judgment incorporating the parties’ agreement.
On August 13, 2013, two years and eight months after the hearing, the wife filed a motion in the trial court seeking to compel the husband to give her her share of the money that had been held in the husband’s thrift savings plan. In the motion, the wife asserted that, in March 2013, the husband had withdrawn more than 93% of the money in the thrift savings plan in violation of the parties’ agreement, which, we note, had not yet been incorporated into a judgment. She stated that she did not learn of the withdrawal until August 4, 2013. The record indicates that the trial court never ruled on the wife’s motion.
The trial court did not enter a judgment incorporating the agreement and divorcing the parties until May 22, 2015, four years and five months after the December 2010 hearing. The divorce judgment stated, among other things:
“The husband’s retirement funds in a thrift savings plan and also those funds in a federal retirement system shall be divided with each party receiving 1/2 of the funds from December 2, 2010. Each party shall execute all documents necessary to effect the transfer of the funds belonging to [the wife] and the parties agree the Court may enter all Orders necessary to effectuate such transfer.”
On June 18, 2015, the wife filed a timely motion to alter, amend, or vacate the judgment. In her postjudgment motion, the wife requested that the trial court issue the QDROs needed for the wife to receive her share of the money from husband’s thrift savings plan and from his federal retirement account. The wife asserted that the husband had by that time withdrawn all of the money from the thrift savings plan. She also asserted that the husband had retired in January 2014 and had begun drawing income from the federal retirement system. However, the wife said, the husband now refused to provide her with her share of the money from his federal retirement account and, therefore, QDROs were needed to ensure that she received the money as agreed in the parties’ settlement, which had been incorporated into the May 22, 2015, judgment. The wife’s postjudgment motion was deemed denied by operation of law on September 16, 2015. The wife filed a timely notice of appeal on October 26, 2015.
On appeal the wife contends that the trial court erred in refusing to enter the requested QDROs. The wife states that, for her to be able to receive the share of the two accounts at issue that she was awarded in the divorce judgment, federal law requires that a QDRO must be entered. QDROs are provided for under the federal Employment Retirement Income Security Act (“ERISA”), 29 U.S.C. § 1001 et seq„ and “ ‘facilitate the distribution of pensions and employee benefits that are subject to [the] provisions [of the act].’ Duran v. Duran, 657 N.W.2d 692, 694 n. 1 (S.D.2003).” Romer v. Romer, 44 So.3d 514, 516 n. 1 (Ala.Civ.App.2009). Under ERISA, pension plans “shall provide that benefits provided under the plan may not be assigned or alienated” except in accordance with the requirements of any applicable QDROs. 29 U.S.C. § 1056(d)(1) and (3)(A). ERISA further provides:
“(B) For purposes of this paragraph—
*576 “(i) the term ‘qualified domestic relations order’ means a domestic relations order—
“(I) which creates or recognizes the existence of an alternate payee’s right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan, and
“(II) with respect to which the requirements of subparagraphs (C) and (D) are met, and
“(ii) the term ‘domestic relations order’ means any judgment, decree, or order (including approval of a property settlement agreement) which—
“(I) relates to the provision of child support, alimony payments, or marital property rights to a spouse, former spouse, child, or other dependent of a participant, and
“(II) is made pursuant to a State domestic relations law (including a community property law).
“(C) A domestic relations order meets the requirements of this subparagraph only if such order clearly specifies—
“(i) the name and the last known mailing address (if any) of the participant and the name and mailing address of each alternate payee covered by the order,
“(ii) the amount or percentage of the participant’s benefits to be paid by the plan to each such alternate payee, or the manner in which such amount or percentage is to be determined,
“(iii) the number of payments or period to which such order applies, and
“(iv) each plan to which such order applies.
“(D) A domestic relations order meets the requirements of this subparagraph only if such order—
“(i) does not require a plan to provide any type or form of benefit, or any option, not otherwise provided under the plan,
“(ii) does not require the plan to provide increased benefits (determined on the basis of actuarial value), and
“(iii) does not require the payment of benefits to an alternate payee which are required to be paid to another alternate payee under another order previously determined to be a qualified domestic relations order.”
29 U.S.C. § 1056(d)(3).
In their respective briefs to this court, the husband and the wife appear to agree that the divorce judgment entered on May 22, 2015, does not meet the statutory definition of a QDRO. Based on the arguments of the parties, we conclude that the wife is entitled to the entry of the QDROs she requested to facilitate the transfer of money from the husband’s accounts that the parties agreed she was to have and that the trial court awarded to her in the divorce judgment. Accordingly, the trial court erred in denying the wife’s post-judgment motion requesting the entry of the QDROs.
For the reasons set forth above, the denial of the wife’s motion to alter, amend, or vacate the divorce judgment is reversed, and the cause is remanded to the trial court for it to enter the necessary QDROs. Our holding is not intended to preclude the trial court from ordering assistance from the parties in gathering the pertinent information and submitting any required documentation needed for the preparation of the QDROs.
The wife’s motion requesting the release of funds from the husband’s federal-retirement-system account is denied.
*577 REVERSED AND REMANDED WITH INSTRUCTIONS.
PITTMAN and MOORE, JJ., concur.
DONALDSON, J., concurs specially.
THOMAS, J., recuses herself.