*Jimmie B. Allred v. Passaporn P. Allred*, No. 672, September Term, 2018, Opinion by Adkins, J.


**DIVORCE – MARITAL PROPERTY – DIVISION OF RETIREMENT BENEFITS**:

Because marital settlement agreement between a husband and wife described the wife's share of a retirement account as a specific sum and provided for investment experience from a certain date to the "date of judgment of divorce," the circuit court erred in awarding investment experience beyond the date of the divorce to wife.

Circuit Court for Howard County
Case No.: 13-C-14-098841

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 672

September Term, 2018

_____

JIMMIE B. ALLRED

v.

PASSAPORN P. ALLRED

_____

Nazarian,
Wells,
Adkins, Sally D.
  (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Adkins, Sally D., J.

_____

Filed: November 21, 2019

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

A bullish stock market is the genesis for this appeal, which involves interpretation of a Marital Settlement Agreement ("Settlement Agreement") between Jimmie B. Allred ("Husband"), appellant and Passaporn P. Allred ("Wife"), appellee. The dispute is what amount of the post-divorce appreciation in Husband's 401(k) stock account should be shared by Wife.

The parties were married on October 15, 2004 and divorced on July 30, 2014. The Judgment of Absolute Divorce directed that the provisions of the Settlement Agreement, which was signed on April 2, 2013, were incorporated by reference, but not merged, into the judgment. The judgment reserved jurisdiction for the receipt and entry of any order necessary "to effectuate the intent of the parties as expressed in their agreement." Paragraph 6R of the Settlement Agreement addressed disposition of what the parties, and we, shall refer to as the "Principal 401(k)":

> Husband is the owner of a Principal EDO 401(k) ("Principal 401(k)") with an approximate marital value of $293,889.00. The parties agree that Wife will receive from the Principal 401(k) the sum of $181,667.00 **plus or minus investment experience**, dating from March 1, 2013 **to the date of Judgment of Divorce**. The parties agree that Husband will receive the balance. The parties agree that this transfer will be pursuant to a Qualified Domestic Order or Court Order Acceptable for Processing, as needed and that they will each pay one-half the cost necessary to secure this Order. (Emphasis added.)

The Settlement Agreement contained "the entire understanding of the parties" and they concurred that "[n]o modification or waiver of any of [its] terms shall be valid unless made in writing, and signed by the parties . . . ." The parties also agreed to "execute such

documents and perform such acts as may be required to effectuate the purposes of [Paragraph 6R]." Divorce was granted on July 30, 2014.

After the judgment of divorce was entered, counsel for Wife prepared a Qualified Domestic Relations Order ("QDRO") to transfer Wife's interest from Husband's Principal 401(k). Husband's attorney disagreed that wife was entitled to "investment experience" for any period after the divorce and requested several times that the QDRO be amended to provide that the investment experience be allowed only until the date of divorce, as called for in the Settlement Agreement. Wife's attorney did not agree.

More than three years later, on October 3, 2017, Wife filed a Complaint for Entry of Qualified Domestic Relations Order with the circuit court, asking for "investment experience" on her share of the 401(k) after the date of divorce. In his answer, Husband contended that he, not Wife, was entitled to investment experience after the date of divorce. The circuit court ruled in favor of Wife, saying:

> [Wife] is entitled to her share of the 401(k) proceeds as described in the parties' Marital Settlement Agreement, as well as any and all investment experience attributable to her share since the date of the divorce. Conceptually, [Wife's] share is separate as of the date of divorce, and any interest (or losses) attributable to [Wife's] share are [Wife's] property, and are not the property of [Husband].

The parties were ordered to submit a Qualified Domestic Relations Order reflecting the above terms. Husband appealed to this Court.

The questions presented are as follows:

1. Did the lower court err by altering gains and losses beyond the terms of the parties' marital separation agreement?

2. Did the lower court abuse its discretion when the judgment for absolute divorce was modified without demonstrating any procedural error?

3. Did the lower court err by granting appellee her relief sought without issuing a scheduling order or setting the matter in for a hearing?

We answer Yes to the first question and reverse the circuit court because it altered gains and losses beyond the terms of the Separation Agreement. Accordingly, we need not answer Questions 2 and 3 above.

## DISCUSSION

As Husband explains, most retirement accounts are subject to the Employee Retirement Income Security Act of 1974 ("ERISA"), originally enacted as Pub. L. No. 93-406, 88 Stat. 829. Although ERISA generally precludes assignment of a qualified plan to third parties, it does permit division and transfer of retirement funds between divorcing parties without tax consequences by way of a QDRO. *See Rohrbeck v. Rohrbeck*, 318 Md. 28, 30-36 (1989).

Husband contends that the circuit court erred in entering the QDRO because its terms deviated from the Settlement Agreement by allocating to Wife investment experience on the retirement account for periods after the divorce decree. He elaborates that the issue is straight contract interpretation, using the objective theory, wherein "the clear and unambiguous language of an agreement will not give way to what the parties thought the agreement meant or was intended to mean." *Pulliam v. Pulliam*, 222 Md. App. 578, 587-88 (2015). The *Pulliam* Court explained that "the true test of what is meant is not what the

parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant." *Id*.

Wife defines this appeal as "nearly identical to the issue in *Rivera v. Zysk*, 136 Md. App. 607 (2001)," also dealing with the alternate payee's entitlement to investment experience. She focuses on the following language from *Rivera*:

> We perceive no error in the chancellor's granting appellee the earnings experience generated by the Northrup Grumman 401k. The agreement signed by the parties gave appellee 50% of the account valued at $234,000. At the time of distribution, nearly one year later, the account had appreciated to approximately $300,000. Appellant argues that appellee was entitled to 50% of the value of the account as of the date of the agreement and all subsequent earnings remained with appellant. The chancellor concluded that the agreement was not ambiguous and awarded appellee 50% of the increased value. The decision was eminently fair.

*Id.* at 620. Wife acknowledges, though, that the language of the marital settlement agreement in *Rivera* differed from the language here in two respects. There, (i) according to the marital settlement agreement, a percentage of the account balance was awarded, and (ii) the agreement was silent as to investment experience after the divorce decree.

Here, in contrast, Wife's share was a specific sum "plus or minus investment experience dating from March 1, 2013 to the date of the Judgment of Divorce." This distinction is significant, as we explain further below.

Wife argues, nonetheless, that the present case is parallel with *Rivera* because both marital settlement agreements were silent about investment experience after divorce. As support for her argument, she also cites *Potts v. Potts*, 142 Md. App. 448 (2002) for the proposition that the pensioner spouse cannot reduce the amount of the former spouse's

benefit by providing survivor benefits to a third party because such would "result in a post-judgment reduction in the benefit awarded to the former spouse that was not anticipated when the pension was divided." She distills the *Potts* holding to mean that "[s]imply put, once a share of a pension has been awarded to a former spouse, the participant cannot take any action to reduce the amount of the former spouse's benefit."

She argues that "once the divorce judgment is passed, the amount awarded to the alternate payee becomes his or her property"—citing Md. Code (1984, 2019 Repl. Vol.), § 8-205(a)(2) of the Family Law Article—which provides that a court may transfer ownership in a retirement plan from one party to the other. She reasons that if "investment experience on alternate payee's share remained the participant's property until the QRDO was processed, then the date of transfer of the property would be determined by the plan administrator, not the court. Such an interpretation would be contrary to § 8-205(a)(2) of the Family Law Article." According to Wife, correct application of the statute and Settlement Agreement means that "Wife was awarded title to her share of the retirement account on the date of divorce, which was July 30, 2014 . . . . As a result, the investment experience on her portion of the account must also be her property."

Although Wife's argument is interesting, we see it as flawed because the Settlement Agreement explicitly addresses investment experience after the date of its execution. It says in plain language that Wife is entitled to investment experience for a specific period— "March 1, 2013 to the date of Judgment of Divorce." The next sentence in the Agreement says: "The parties agree that Husband will receive the balance."

When applying the objective theory of contract interpretation, we "must first determine from the language of the agreement itself what a reasonable person in the position of the parties would have meant at the time it was effectuated." *Pulliam*, 222 Md. App. at 588. We think it eminently clear, from its plain language, that a reasonable person in the position of the parties would have meant that the Wife's entitlement to investment experience is limited to the period *preceding* the divorce decree.

We do not see the *Potts* decision as directly analogous because there the husband, pension beneficiary, took an action that reduced the 50% percent share awarded to the wife by the circuit court when he elected a survivor benefit for a third party that reduced the value of the entire pension. Because the wife's share was expressed as a percentage of the account, this action necessarily reduced the value of what the court awarded her. Here, Husband has taken no analogous action. Instead, Husband stood ready at all pertinent times to approve a QDRO that awarded Wife investment experience between the signing of the Settlement Agreement and the divorce decree. There is no evidence that Husband took any delaying action in consenting to a QDRO, which might have supported some equitable relief. If Wife had timely pursued distribution of the assets in the retirement account, she would have been able to invest those assets and potentially generate appreciation in a rising market. Her failure to do so does not entitle her to a greater share of the retirement account than agreed to by the parties.

We are not persuaded otherwise by the out-of-state cases cited by Wife. Largely these cases involved instances when one spouse had been awarded a percentage share of the other spouse's retirement plan, a division method that some of the courts explicitly

recognized as materially different from an award of a specific sum. *Compare Taylor v. Taylor*, 653 N.W.2d 524, 528 (Wis. Ct. App. 2002) (wife had to share in losses in retirement account because she elected to take a percentage share of 401(k), rather than seeking fixed sum), *and Meyncke* v. *Meyncke*, 82 A.3d. 585, 590 (Vt. 2013) (wife had to share in losses occurring before QDRO issued because "[t]he bottom line is that the divorce court awarded wife fifty percent of the retirement accounts, not a sum certain based on the then-value of the accounts."), *with Romer v. Romer*, 44 So.3d 514, 522 (Ala. Civ. App. 2009) ("[B]y setting forth a sum certain that was to be paid to the wife, the parties implicitly determined that the husband alone would bear the risk of any decrease in the value of his account or benefit from any increase in the value of his account[;]" and "parties were free to have allocated the risk of gains and losses otherwise, by, for example, expressing the distribution to the wife in terms of a percentage of the value . . . or explicitly stating that that parties would bear their proportionate share of gains and losses . . . ."). *See also Allen v. Allen*, 455 S.E.2d 440, 441 (N.C. Ct. App. 1995) (percentage award); *Austin v. Austin*, 748 A.2d 996, 999 (Me. 2000) (percentage award); *Shorter v. Shorter*, 851 N.E.2d 378, 386 (Ind. Ct. App. 2006) (percentage award);[1] *Duncan v. Duncan,* 383 S.W.3d 833, 834 (Ark. 2011) (percentage award). These cases are comparable to *Salkini v. Salkini*, ___ Md. App. ___ (2019), a case filed or intended to be filed simultaneously herewith, in which we

---

[1] *Shorter v. Shorter*, 851 N.E.2d 378, 385 (Ind. Ct. App. 2006), applied the principle that "absent express language stating otherwise," a settlement agreement dividing a pension plan implicitly contemplates that both parties will share "all of the rewards and risks associated with an investment plan."

sustained the trial court's award of an alternate payee's investment experience, reasoning that, unless otherwise provided by the parties, "[w]hen an alternate payee's share is expressed as a fraction or a percentage, the [investment earnings] between the divorce and the date of segregation of the alternate payee's interest into a separate account would be derived from both parties' interests, not the original beneficiary's interest alone."

Wife's cited cases differ from the present case in other substantial respects as well. *Allen* was governed by a statute explicitly directing inclusion of gains and losses on the retirement portfolio. *Id.* at 442. In *Duncan*, the investment losses at issue occurred after wife's portion of her husband's retirement had been segregated according to a QDRO, and for this reason she was required to share in investment losses allocable to her share. Further, none of Wife's cases involved marital settlement agreements that expressly address "investment experience", and say, as the Allred one does, that Wife receives a set sum "plus or minus investment experience," from a date certain "to the date of Judgment of Divorce." Here, the Settlement Agreement is clear: Wife receives the set sum of $181, 667.00, plus or minus the investment experience dating from March 1, 2013 to July 30, 2014.

For the reasons set forth above, we reverse the judgment of the circuit court and remand with directions for it to issue a QDRO consistent with the terms of this Opinion, upon submittal of an appropriate proposed order by counsel for Husband.

> **JUDGMENT OF THE CIRCUIT COURT FOR HOWARD COUNTY REVERSED AND THE CASE REMANDED FOR FURTHER PROCEEDINGS IN ACCORDANCE WITH THIS OPINION; COSTS TO BE PAID BY APPELLEE.**