On Application for Rehearing

PER CURIAM.
The opinion of February 18, 2000, is withdrawn, and the following is substituted therefor.
The parties have been before this court previously. See G.G. v. R.S.G., 668 So.2d 828 (Ala.Civ.App.1995).
The trial court divorced the parties on August 3, 1994, incorporating the written agreement of the parties into the divorce judgment. The court amended its judgment on September 13, 1994, again incorporating the written agreement of the parties into the amended judgment. Pursuant to the agreement, the wife was, among other things, awarded the exclusive *492 use and possession of the marital residence pending its sale; the husband was given complete authority regarding all aspects of the sale of the residence.[1] Additionally, the wife was awarded custody of the parties’ minor child and the husband was ordered to pay $1,500 per month in child support. The wife appealed and the husband cross-appealed. In that 1995 case, we affirmed in part; reversed in part; and remanded with instructions. The issues raised in that 1995 case are not relevant to the issues presently before this court.
On January 16, 1996, the wife petitioned the court, seeking to have the husband held in contempt for violating certain provisions of the divorce judgment. The husband counter-petitioned, alleging, among other things, that the wife had caused an unnecessary deficiency in the sale of the marital residence in the amount of $12,500 by reneging on a promise to sell the residence to him. The husband sought an award of $12,500 from the wife for the alleged deficiency in the sale price of the residence. The husband also alleged a material change in his financial situation and sought a reduction in his monthly child-support obligation. On November 22,1996, the court placed the matter on its administrative docket for the purpose of mediation.
On January 30, 1998, the husband again petitioned the court for relief, seeking a $12,500 award; however, he amended this claim to include interest and expenses from the date the residence would have been sold until the date the residence was actually sold.[2] He also renewed his request to have his monthly child-support obligation reduced. The wife answered the husband’s petition and counter-petitioned to reallege the matters asserted in her January 1996 petition to hold the husband in contempt. On June 9, 1998, the husband amended his petition to strike his claim for a reduction in his child-support obligation and, instead, sought an accounting by the wife of the child-support payments made on behalf of the minor child and requested that any amount of child support paid above the reasonable expenses of the child be placed in a joint custodial savings account for the child’s future needs. The wife answered this amended petition on June 19,1998.
Following an ore tenus proceeding, the court, on March 19, 1999, among other things, entered an order denying the husband’s requested relief regarding the alleged deficiency in the sale of the marital residence and the accounting for the child-support payments. The court also denied certain relief requested by the wife. The wife moved the court to alter, amend, or vacate the judgment, or, in the alternative, for a new trial. The court denied the wife’s postjudgment motion. The husband appeals.
We note that when the trial court receives ore tenus evidence, its judgment based on that evidence is presumed to be correct and will not be set aside on appeal absent plain and palpable error; “[hjowever, where there is no factual dispute between the parties, the reviewing court must determine whether the trial court correctly applied the relevant law to the facts and whether the judgment was an abuse of discretion and plainly and palpably wrong.” Franz v. Franz, 723 So.2d 61, 63 (Ala.Civ.App.1997). Further, when the trial court “improperly applies the law to the facts, no presumption of correctness exists as to the court’s judgment.” Ex parte Agee, 669 So.2d 102, 104 (Ala.1995).
*493 ■ Both parties adopt the factual findings of the trial court regarding the “frustrated home sale issue.” Therefore, this court will, too. The trial court made the following factual findings:
“Under the Decree, [the wife] received the use of the home until [the husband] could sell it. He was paying both mortgages[3] and the utilities, in addition to periodic alimony and child support. He was required to give her thirty days notice to vacate. In May 1995, he was presented with a $300,000 offer from [W.]. The offer required a closing by July 10, 1995. He countered with $335,000. [W.] responded with $305,000. None of these sales [offers] would have covered the then outstanding mortgage balances totalling about $345,000.
“[The husband] contacted Randall Brown at SouthTrust Bank and received tentative approval of a loan to cover the shortfall. [The husband] also discussed his options with his accountant, Larry Bern. Mr. Bern suggested that [the husband] himself buy the house. [The husband] went back to Mr. Brown and received tentative approval of a new mortgage to cover that possibility.
“The home had appraised for $400,000 in March 1993. [The husband] terminated his listing contract with Sandra Nickel and entered a new one with Bill Davis whereby he could avoid a real estate commission if he bought himself. [The husband] went to see [the wife] at the former home to discuss the possibility of his purchase. According to his testimony, she agreed that he could purchase himself if he gave her occupancy through the end of the summer and ..., with that assurance, he declined [W.’s] offer. [The wife’s] recollection is different. She said that she knew nothing of [W.’s] offer (although this conflicts with [W.’s] later testimony); that he came, revealed his financial plight, and asked for a reconciliation so that he could move back in, and that all she said was that she would ‘let him know.’
“Whatever may have been their discussion or understanding, he completed a financial statement for SouthTrust and ordered a new appraisal [on the residence].
“[The wife] would not cooperate with the appraiser. [The husband] had lost -his position with his law firm, seriously affecting his cash flow. He began to consider some form of bankruptcy. [The wife] began to waffle about his purchase. He ran out of funds and stopped paying the mortgages in September 1995. [The husband] ended up selling [the residence to a third party] in March 1996, for $292,500. [The husband] was left with over $70,000 owing to AmSouth on the two mortgages. He claims that over $44,500 of this results from the failure to sell to [W.]. [The husband] wants [the wife] to reimburse him for the portion which he attributes to her.”
The parties’ divorce agreement provides:
“The house and lot ... are jointly owned by the parties. This property is presently on the market for sale and the parties shall continue to exercise every effort to sell said property as soon as reasonably possible. The Husband shall have the final decision regarding the sale of the property and all aspects relating to the sale of the property including but not limited to the sales price, real estate agent’s commission (if any), time of possession (Wife must have at least thirty days notice in order to relocate), etc. When the property is sold, the Husband shall be reimbursed for any reasonable major repairs incurred postdivorce necessary for the sale of the property.... Thereafter, the parties shall equally divide any net proceeds from said sale. If there is a deficiency resulting from the sale of this property, *494 then the Husband shall be responsible for said deficiency.
“Pending the sale of the property, the Wife shall have the exclusive use and possession of said property as her residence. Pending the sale of the property, the Husband shall be responsible for the mortgage payments, insurance, taxes, and utilities.... ”
The trial court concluded that, based on the language of the parties’ agreement giving the husband “the final decision regarding the sale of the property and all aspects relating to the sale of the property including but not limited to the sales price, real estate agent’s commission (if any), time of possession (Wife must have at least thirty days notice in order to relocate), etc.,” the husband was not required to obtain the wife’s consent to sell the home to anyone, including himself. The court stated that any loss resulting from the husband’s failure to accept W.’s offer was the result of his own business decision and that it would not hold the wife liable.
The courts of this state favor compromise and settlement of litigation, particularly in cases involving families. Junkin v. Junkin, 647 So.2d 797 (Ala.Civ.App.1994). “[A] settlement agreement which is incorporated into a divorce decree is in the nature of a contract.” Smith v. Smith, 568 So.2d 838, 839 (Ala.Civ.App.1990). A divorce judgment should be interpreted or construed as other written instruments are interpreted or construed. Sartin v. Sartin, 678 So.2d 1181 (Ala.Civ.App.1996) “The words of the agreement are to be given their ordinary meaning, and the intentions of the parties are to be derived from them.” Id., at 1183. Whether an agreement is ambiguous is a question of law for the trial court. Wimpee v. Wimpee, 641 So.2d 287 (Ala.Civ.App.1994). An agreement that by its terms is plain and free from ambiguity must be enforced as written. Jones v. Jones, 722 So.2d 768 (Ala.Civ.App.1998). An ambiguity exists if the agreement is susceptible to more than one meaning. Vainrib v. Downey, 565 So.2d 647 (Ala.Civ.App.1990). However, if only one reasonable meaning clearly emerges, then the agreement is unambiguous. Id. Finally, if a provision of an agreement is certain and clear, it is the duty of the trial court to determine its meaning, and the court’s determination is afforded a heavy presumption of correctness and will not be disturbed unless it is clearly erroneous. Id.
The husband argues on appeal that the sale provision of the parties’ agreement must be read as containing an implicit limitation against a sale of the residence to himself absent the wife’s consent or else the agreement becomes meaningless and contrary to the intentions of the parties. The wife argues that the agreement is plain and unambiguous and susceptible to only one meaning, i.e., that the husband had complete authority to sell the residence to anyone, including himself, and did not require her permission to do so.
In their divorce agreement, the parties specifically addressed the issue regarding the pending sale of the marital residence. They agreed to give the sole decision-making authority regarding all aspects of the sale to the husband. Certain aspects of the sale were specifically listed by the parties in the agreement, including the sales price, the real estate agent’s commission, and the wife’s time of possession, which included a 30-day notice requirement. The agreement specifically stated that the husband’s authority over the sale was not limited to those aspects, but simply included them. Although not listed, one aspect of the sale that the husband must necessarily have had control over was the matter of who the residence would be sold to. Nothing in the agreement can be read or construed to require the husband to obtain the wife’s consent or approval before making a decision regarding the sale of the residence.
Although the trial court did not make a specific finding as to whether the agreement was ambiguous, implicit in its holding *495 is a conclusion that the agreement is free of an ambiguity. Therefore, the trial court’s determination regarding the meaning of the sale provision of the agreement is afforded a presumption of correctness on appeal. Vainrib, supra. After carefully reviewing the agreement in question, we conclude that it is plain and free of an ambiguity, because one meaning, and one meaning only, clearly emerges from a reading of that agreement — the husband had the sole authority regarding all aspects of the sale of the residence, even if he chose to sell to himself. Accordingly, the judgment is affirmed as to this issue.
The husband next argues that the court erred in failing to order an accounting of the monthly child-support payments. It is undisputed that he is not seeking a reduction of his monthly support obligation, but, rather, an accounting of the payments, requesting that any surplus be deposited into a bank account for the benefit of the child. Regarding the issue of child support, the trial court stated:
“The Former Husband has a common complaint. He does not believe the custodial parent is using all of the child support for the support of the child, to the exclusion of herself and the daughter of her first marriage. The living expenses of multiple household members are so commingled, however, that [the husband] is requesting the Court to engage in an exercise in futility, something it is neither required or willing to do. There is no showing that current support is either too high or too low. It will not be disturbed.”
We note that when the equitable jurisdiction of the trial court is invoked, the court has much discretion in determining whether to order an accounting. McDuffie v. Holland, 690 So.2d 386 (Ala.Civ.App.1996). In Fletcher v. Cole, 690 So.2d 444 (Ala.Civ.App.1997), the father, like the father in the present case, sought an accounting of child-support payments and requested that any excess of child-support payments not used to meet the needs of the child be placed in a trust fund for the benefit of the child, rather than seeking a reduction of the child-support obligation. This court stated:
“In White [v. White, 334 So.2d 908 (Ala.Civ.App.1976)], this court held that it was relevant to present as evidence of ‘changed circumstances’ that the amount of child support being paid was not required to meet the needs of the children or that the child support was being used to subsidize the mother’s stepchildren. We do not find that White supports the father’s assertion that the mother should be required to account for her expenditures of the child support money, particularly in light of the fact that the father was not seeking a reduction in his child support obligation, but a requirement that any excess child support payments be placed in a trust fund to be used for the children’s needs.”
Id., at 446-47.
Accordingly, we conclude that the court did not err in the present case in denying the father’s requested accounting of child-support payments.
The wife’s request for an attorney fee on appeal is denied.
OPINION OF FEBRUARY 18, 2000, WITHDRAWN; OPINION SUBSTITUTED; APPLICATION FOR REHEARING GRANTED AND RULE 39(k) MOTION DENIED; AFFIRMED.
ROBERTSON, P.J., and YATES, MONROE, and CRAWLEY, JJ., concur.
THOMPSON, J., concurs in the result.

. The parties jointly owned the residence.

. Before the husband and wife entered into the alleged agreement for the husband to buy the residence, a third party had made an offer to purchase the residence for $305,000. The husband alleges that when the wife reneged on the agreement for the husband to purchase the residence, it was too late for the deal with the third party to be revived. The residence was ultimately sold for $292,500. The husband seeks the difference between the offer and the actual sale price, plus interest and other expenses.

. The residence was subject to a first mortgage with monthly payments of $2,709.10 and a second mortgage with monthly payments of $305.13.