PITTMAN, Judge.
 

 Kathy Judge (“Kathy”), the surviving spouse of Claude Judge (“Claude”), appeals from the judgment of the Jackson Circuit Court determining that a house and lot located at 801 South Houston Street in Scottsboro (“the house”) was not owned in fee simple by Claude at the time he died on June 18, 2004, and thus could not be included in Claude’s estate.
 

 Claude died intestate and was survived by Kathy and by his two children, Jade Judge (“the daughter”) and Timothy Judge (“the son”). Claude had been married three times. Claude first married Charlotte Judge (“Charlotte”) on October 3, 1967, and the son was born of their marriage. A judgment was entered divorcing Claude and Charlotte and incorporating an agreement between those parties in July 1979; the son was approximately six years old at that time. That divorce agreement states, in pertinent part:
 

 “5. That [Charlotte] execute and deliver to [Claude] a deed conveying all her right, title and interest in and to [the house] ... owned by said parties in Scottsboro, Alabama. That [Charlotte] shall have the right to occupy said house ... as a home until such time as she might re-marry. Should [Charlotte] remarry, then at such time, [Claude] shall have the
 
 option
 
 to sell said house ... with the net proceeds, after deducting only the amount necessary to pay the mortgage now existing on said property, to be payable to the said son of the parties ... if he is 21 years of age at the
 
 *164
 
 time of such sale. If [the son] is not 21 years of age at the time of such sale, then said funds shall be deposited in an interest bearing trust account for the benefit of the [the son] with the provision that said funds cannot be withdrawn without the written consent of both [Charlotte] and [Claude] until such time as [the son] reaches the age of 21 years, at which time said funds, together with accrued interest, shall become the absolute property of [the son].
 

 “6. During the time [Charlotte] shall occupy the house ... hereinabove referred to, [Claude] shall pay the house payment on the mortgage upon said property which is presently approximately $165.00 per month which shall be considered as child support for [the son] during the minority of [the son]. If said house ... is sold under the provisions of Section 5 herein during the minority of [the son], then [Claude] shall pay to the clerk of this court $165.00 per month during the remaining minority of [the son] to be paid over to [Charlotte] for the support and maintenance of [the son].”
 

 (Emphasis added.)
 

 Charlotte testified that her understanding of the agreement had been that the son would receive the house, either in trust or in fee simple, on his 21st birthday and that she “wouldn’t have signed the papers [if the parties’ intention had been] otherwise.” Charlotte married another man when the son was 18 years old, but Claude did not sell the house at that time. Moreover, the record indicates that when the son reached the age of 21, title to the house was not transferred to the son.
 

 Claude later married a second woman, Gay Evelyn Johnson Judge (“Evelyn”), but they divorced in February 1980; no children were born of their marriage. Evelyn did not testify at trial, but both Kathy and the son stipulated that her testimony would have been that the house was to be held in trust for the son until he turned 21 years old.
 

 Claude then married Kathy in August 1992, and the daughter was born of their marriage. Kathy filed a complaint seeking a divorce from Claude on January 17, 2003; however, Claude died before a final divorce judgment was entered. In the numerous filings of documents in the estate action and in the divorce action, Kathy never requested the house; for example, Kathy never even mentioned the house in her divorce complaint. Moreover, Claude, in his response to Kathy’s divorce complaint and in his counterclaim in the divorce action, did not mention the house. Additionally, in a document filed by Claude in the circuit court entitled “Inventory and Appraisement,” under a heading labeled “Property Held in Trust for Third Parties,” Claude mentioned only a doll collection and a “piggy bank.” Kathy filed a petition for letters of administration as to the intestate estate of Claude, and the probate court entered an order granting those letters of administration and naming Kathy as administratrix. The son filed a petition tor removal of the estate from the probate court to the circuit court, which was granted. The circuit court ordered Kathy to file an amended inventory and accounting of Claude’s estate. The son filed a motion to remove Kathy as adminis-tratrix of Claude’s estate on May 25, 2005. On August 19, 2005, Kathy filed an amended inventory of the estate, in which she did not list the house; however, that same day, she filed another inventory of the estate, which included the house, and averred that its value was $60,000. The son filed an objection on July 20, 2006, to the inventory in which he claimed that the house was his property and not estate property.
 

 
 *165
 
 Importantly, the record indicates that, during Claude’s life, he continued to use the house as his own property without any challenges by Charlotte or the son to that use; even after the son had reached 21 years of age, the record indicates, the son did not file any actions or motions in the divorce action involving Claude and Charlotte in which he claimed any interest in the house, nor was any proceeding initiated to force the sale of the house and to distribute the proceeds from such a sale to the son. In fact, Claude had obtained loans secured by a mortgage on the house as recently as 2001, had resided in that home on occasion, and had helped rear the daughter in that home.
 

 After a pretrial conference, a guardian ad litem was appointed to represent the heirship interests of the daughter. The circuit court conducted an ore tenus hearing on June 21, 2007, and issued an order on September 13, 2007, finding that the house was the son’s sole property and was not estate property. The order concluded that the house w7as not due to be distributed to Claude’s hems as part of his estate. In posttrial proceedings, Kathy filed an objection to a notice of sale of the house and filed a motion to direct the entry of a final judgment pursuant to Rule 54(b), Ala. R. Civ. P., which was granted on October 11, 2007. Kathy timely appealed to the Alabama Supreme Court; that court transferred her appeal to this court pursuant to § 12-2-7(6), Ala. Code 1975.
 

 Kathy contends on appeal that the circuit court erred in interpreting the language in the judgment divorcing Claude and Charlotte so as to have created a trust for the son in which the son would own the house in fee simple and in determining that, therefore, the house was not part of Claude’s estate. We agree with Kathy.
 

 This court reviews
 
 de novo
 
 a trial court’s determination whether an agreement incorporated into a divorce judgment is ambiguous.
 
 See Meyer v. Meyer,
 
 952 So.2d 384, 391 (Ala.Civ.App.2006). In
 
 R.G. v. G.G.,
 
 771 So.2d 490 (Ala.Civ.App.2000), this court stated:
 

 “ ‘[A] settlement agreement which is incorporated into a divorce decree is in the nature of a contract.’
 
 Smith v. Smith,
 
 568 So.2d 838, 839 (Ala.Civ.App.1990). A divorce judgment should be interpreted or construed as other written instruments are interpreted or construed.
 
 Sartin v. Sartin,
 
 678 So.2d 1181 (Ala.Civ.App.1996) ‘The words of the agreement are to be given their ordinary meaning, and the intentions of the parties are to be derived from them.’
 
 Id.
 
 at 1183. Whether an agreement is ambiguous is a question of law for the trial court.
 
 Wimpee v. Wimpee,
 
 641 So.2d 287 (Ala.Civ.App.1994). An agreement that by its terms is plain and free from ambiguity must be enforced as written.
 
 Jones v. Jones,
 
 722 So.2d 768 (Ala.Civ.App.1998). An ambiguity exists if the agreement is susceptible to more than one meaning.
 
 Vainrib v. Downey,
 
 565 So.2d 647 (Ala.Civ.App.1990). However, if only one reasonable meaning clearly emerges, then the agreement is unambiguous.
 
 Id.
 
 Finally, if a provision of an agreement is certain and clear, it is the duty of the trial court to determine its meaning, and the court’s determination is afforded a heavy presumption of correctness and will not be disturbed unless it is clearly erroneous.
 
 Id,”
 

 771 So.2d at 494.
 
 See also Ex parte Little-page,
 
 796 So.2d 298, 301 (Ala.2001);
 
 Van Allen v. Van Allen,
 
 812 So.2d 1276, 1277 (Ala.Civ.App.2001); and
 
 Granger v. Granger,
 
 804 So.2d 217, 219 (Ala.Civ.App.2001).
 

 Alabama appellate courts have stated that a court will not look beyond the four corners of a written instrument unless the instrument contains latent ambiguities.
 
 *166
 

 E.g., Martin v. First Nat’l Bank of Mobile,
 
 412 So.2d 250, 253 (Ala.1982). “[A] latent ambiguity is one that ‘appear[s] only as the result of extrinsic or collateral evidence showing that a word, thought to have but one meaning, actually has two or more meanings.’ ”
 
 Meyer,
 
 952 So.2d at 392 (citing 11 Richard A. Lord,
 
 Williston on Contracts
 
 § 33:40, at 816 (4th ed.2003)).
 

 In this case, although ample testimony was presented to explain what Charlotte believed the agreement stated, we cannot discern a latent ambiguity in that agreement after thorough examination, and we have not been directed by the son to any term of the agreement that could properly be viewed as latently ambiguous; thus, we cannot properly look beyond the four corners of the pertinent divorce judgment in interpreting its language.
 
 See Martin,
 
 412 So.2d at 253. The agreement in this case states that if Charlotte remarried, Claude would have “the
 
 option
 
 to sell [the] house” (emphasis added), and the proceeds would then to go to the son either directly, if the son had reached the age of 21, or indirectly through a trust. Charlotte remarried when the son was 18 years old, and although Claude had the option to sell the house, he chose not to sell. No language in the agreement mandated that the title to the house would automatically pass to the son at a certain age or that the house would necessarily be sold when the son reached the age of 21. The condition precedent for the son’s receiving the funds derived from the house was Claude’s selling the house; however, since that never occurred, the son did not obtain any interest in the house or its potential proceeds. The pertinent divorce-judgment provision envisions only the son’s receiving the profits obtained from selling the house; the son did not, under that judgment, receive a fee-simple interest in the house.
 

 We conclude that the circuit court erred in determining that the son acquired a fee-simple ownership interest in the house based upon the provisions of the judgment divorcing Claude and Charlotte. The house, therefore, is properly considered a part of Claude’s estate so as to be subject to distribution among all Claude’s heirs, including the son and the daughter. Based on the foregoing facts and authorities, the judgment of the circuit court is reversed, and the cause is remanded for proceedings consistent with this opinion.
 

 REVERSED AND REMANDED.
 

 THOMPSON, P.J., and BRYAN, THOMAS, and MOORE, JJ., concur.