BRYAN, Judge.
Curtis Gore (“the former husband”) appeals from a judgment of the Montgomery Circuit Court (“the trial court”) that ordered him to pay postminority-educational-support arrears and that modified his post-minority-educational-support obligation. Patricia White (“the former wife”) cross-appeals from the same judgment insofar as the trial court modified the former husband’s postminority-educational-support obligation and failed to award her a greater amount of attorney fees.

Procedural History

The parties were divorced by the trial court in January 2004, and their divorce judgment incorporated an agreement of the parties. Pursuant to that agreement, the former wife was awarded primary physical custody of the parties’ daughter (“the child”), the only remaining minor child of the parties. The pertinent parts of the parties’ agreement provided as follows:
“4.(E) The parties agree to be responsible on a pro rata basis, meaning the percentage each contributed to a calculation of joint income, for the college education expenses of the ... child, including tuition, room and board, books and fees....
[[Image here]]
“10. Contempt: Should either party fail to abide by the terms of this agreement or take some action which amount[s] to contempt of the court, and it becomes necessary for the other party to seek the relief of the court to enforce his or her rights under this agreement, then the party seeking relief shall be entitled to reimbursement of his or her attorneys fees and other costs.”
On May 2, 2007, the former husband filed a petition to modify his child-support obligation based on an alleged decrease in his income. The former wife filed an answer and a counterclaim requesting modification of certain terms of the divorce judgment. The former wife also requested that the former husband pay a pro rata share of expenses incurred by the child for summer college courses that she had taken before she graduated from high school. The parties entered into a second agreement that provided, in pertinent part:
“4. The former wife agrees that if [the child] wants to attend any other pre-high school graduation college courses, that the former husband will be consulted and will have the right to approve them before he is financially responsible for paying a pro rata share of the costs; and
“5. When [the child] graduates from high school, the former wife and [the] child will consult with the former husband concerning the child’s college plans, and will do so in sufficient time so that he may seek a legal remedy if he strongly disagrees with [the childj’s decision.
“6. All other terms of the [divorce judgment] not modified herein shall remain in full force and effect.”
(Emphasis added.)
The parties’ agreement was incorporated into a judgment modifying the parties’ divorce judgment (“the modification judgment”) on November 20, 2007.
The record indicates that the child began attending the University of Texas in fall 2009. On September 18, 2009, the former wife filed a show-cause petition seeking to hold the former husband in contempt for his failure to pay his pro rata share of the child’s college expenses, among other alleged violations of the di *838 vorce judgment and the modification judgment. The former wife sought an award of attorney fees based on paragraph 10 of the divorce judgment.[1]
On January 19, 2010, the former husband filed an answer to the former wife’s contempt petition and a counterclaim to modify the divorce judgment and the modification judgment. He alleged that there had been a material change in circumstances since the entry of the last judgment because the child had chosen to attend an out-of-state college. He alleged that the cost of attending the out-of-state college was “exponentially higher than any in-state public institution and was otherwise not contemplated by the former husband when he signed the previous agreements.” The former husband further alleged that he did not have the funds necessary to contribute to the child’s out-of-state college expenses, and he asked the trial court to modify the terms of the previous judgments to “reflect a more appropriate postminority support payment.”
The trial court conducted an ore tenus hearing on May 3, 2010, and August 27, 2010. On September 7, 2010, the trial court entered an order that stated, in pertinent part, “that [paragraph] number five ... in the [modification judgment] is vague and overly broad, and further, that it contains a latent ambiguity and is therefore due to be modified.”
On November 28, 2010, the trial court conducted a hearing on the former husband’s petition to modify based on a material change in circumstances regarding his ability to pay the child’s out-of-state college expenses. On December 21, 2010, the trial court entered a judgment that made the following specific findings of fact and legal conclusions:
“The former wife contends that[,] at the time of the divorce, the former husband agreed to pay his pro rata share of the college education expenses of the ... child including tuition, room and board, books and fees. The former wife also contends that in the settlement agreement of the modification petition, the parties agreed that the ... child would consult with the former husband concerning [the child]’s college plans in sufficient time that the former husband may seek legal remedy if he strongly disagreed with [the child]’s decision. [The] former wife contends that throughout [the child]’s senior year in high school, she and [the child] consulted with [the] former husband regarding college applications and the selection process. Further, [the child] notified her father[, the former husband,] well in advance of her high school graduation of her selection of a college choice of the University of Texas. The former wife requested in writing that the former husband seek his legal remedy pursuant to the modification [judgment] if he disagreed with [the child]’s college choice. Rather than seek his legal remedy, the former husband simply refused to pay his pro rata [share] (87%) of [the child]’s college expenses and limited his contribution to that of his pro rata share (87%) of in-state college tuition costs.
“Evidence was clear that the former wife’s Petition to Show Cause filed September 18, 2009, was the result of the former husband’s refusal to seek legal remedy as contemplated in the parties’ modification agreement. Evidence was *839 further clear that the former wife attempted service on the former husband by certified mail, which the former husband never picked up. Further, the former wife’s attempts to serve the former husband by process server were not successful. The former husband was served following the December 7, 2009, order granting former wife’s Motion for Service of Process by Ordinary Mail, and former husband filed his responsive pleading more than four months after the former wife filed her Petition to Show Cause. Such a delay resulted in delay of this matter being heard and additional attorney’s fees incurred by the former wife. Evidence is clear that the parties’ settlement agreement incorporated in the [divorce judgment] included no restrictions regarding the choice of college made by the ... child restricted to that of an in-state public institution. Further, the evidence was clear that the recognized pro rata share of the former husband’s contribution to the minor child’s college expenses since the parties’ 200[4] divorce was 87% and the former wife 13%. Clearly, the former husband’s income has increased since the time of divorce as well as the 2007 modification.
“Evidence was also clear that the former husband purchased a residence in 2006, prior to the 2007 modification, said residence purchase price being $563,800.00. Evidence was further clear that the former husband purchased a vehicle in 2006, said purchase price of the vehicle being in excess of $30,000.00.
“... Evidence shows that in the fall 2009 semester, the ... child’s actual college expenses were $20,246.45. The former husband’s pro rata share obligation of those college expenses should have been $17,614.41. However, the former husband only contributed $8,318.95 for the fall of 2009. The difference between the amount the former husband paid toward the 2009 fall semester and the pro rata 87% share was $9,295.46.
“For the spring 2010 semester, the minor child’s actual expenses were $21,913.02. The former husband’s 87% pro rata share of that amount should have been $19,064.33. The former husband’s actual contribution was $8,618.94, leaving a difference of $10,445.39.
“For the 2010 fall semester, evidence showed that the minor child’s actual expenses were $20,935.60, to which the former Husband’s 87% pro rata share would have been $18,213.97. Evidence shows that the former husband actually contributed $8,818.94, leaving a difference of $9,395.03.
“The former wife showed evidence that she has incurred attorney’s fees as of the November 23, 2010 trial date in the amount of $18,901.41. [The fjormer wife’s attorney’s fees began during the minor child’s senior year in high school in attempts to encourage the former husband to seek legal remedy if he disagreed with [the child]’s college choice and continued through the date of trial, including efforts to have the former husband served with the Petition to Show Cause.
“In its September 7, 2010, order, this Court found a latent ambiguity existed in the modification agreement, and therefore, will modify former husband’s pro rata share of the ... child’s college tuition and expenses....
“The remaining issues [for] the Court to decide were the issue of contempt, the former husband’s obligation toward [the child]’s college expenses, the issues of attorney’s fees and the effective date of the modification of college expenses.
*840 “Based on the foregoing, it is ORDERED, ADJUDGED and DECREED as follows:
“1. That the former husband’s pro rata share of college expenses is hereby modified to that of 65% of the tuition at the University of Texas. Should the [child] return to the state of Alabama for the balance of her college education, the former husband’s pro rata share shall revert to that of 87% effective the semester [the child] attends a public college in the state of Alabama.
“2. That the modified pro rata share of [the] former husband’s obligation to [the child]’s college expenses at the University of Texas shall be effective for the spring 2011 semester, and not retroactive. Therefore, the former husband is obligated to the former wife in the amount of $9,295.45 for the fall 2009 semester, $10,445.39 for the spring 2010 semester, $9,395.03 for the fall 2010 semester, totaling $29,135.87 to be paid to the former wife within ninety (90) days of this Order. The former husband’s obligation for these past expenses is due to his failure to assert his right to seek legal remedy as provided in the parties’ modification agreement....
“3. Beginning the spring semester of 2011, the former husband’s pro rata share shall be in the amount of 65% of college tuition expenses.
“4. That the former husband shall be responsible for the legal fees of the former wife in the amount of $1,000.00.”
Although the trial court’s judgment does not specifically address the former wife’s requests to hold the former husband in contempt, it is evident from our review of the record, including the transcripts from the ore tenus hearings, that the trial court concluded that the former husband was not in contempt. Accordingly, we conclude that the judgment was final because it included an implicit denial of the former wife’s requests to hold the former husband in contempt. See Faellaci v. Faellaci, 67 So.3d 923, 925 (Ala.Civ.App.2011) (concluding that the absence of a specific ruling on a pending petition for a rule nisi did not render the judgment nonfinal because “the trial court’s judgment sufficiently indicate[d] an intention to conclusively rule on the wife’s pending petition for a rule nisi”).
Both parties filed timely postjudgment motions, and both postjudgment motions were denied. The former husband filed a timely notice of appeal, and the former wife filed a timely cross-appeal.

Issues

On appeal, the former husband argues: (1) that the trial court erred by failing to place limitations on his prospective obligation to pay postminority educational support; (2) that the trial court erred by requiring him to pay 87% of the child’s postminority educational expenses from the fall 2009 semester through the fall 2010 semester; (3) that the trial court erred by requiring him to pay 65% of the child’s prospective postminority educational expenses beginning in the spring 2011 semester; and (4) that the trial court erred by requiring him to pay the former wife $1,000 toward her attorney fees.
In her cross-appeal, the former wife argues: (1) that the trial court erred by awarding her only $1,000 in attorney fees; (2) that the trial court erred by concluding that an ambiguity existed in paragraph five of the modification judgment; and (3) that the trial court erred by modifying the former husband’s pro rata share of the child’s postminority educational expenses.

Standard of Review

“ ‘[W]hen a trial court hears ore tenus testimony, its findings on disputed facts are presumed correct and its judgment based on those findings will not be re *841 versed unless the judgment is palpably erroneous or manifestly unjust.’ Philpot v. State, 843 So.2d 122, 125 (Ala.2002). ‘ “The presumption of correctness, however, is rebuttable and may be overcome where there is insufficient evidence presented to the trial court to sustain its judgment.” ’ Wattman v. Rowell, 913 So.2d 1083, 1086 (Ala.2005) (quoting Dennis v. Dobbs, 474 So.2d 77, 79 (Ala.1985)). ‘Additionally, the ore tenus rule does not extend to cloak with a presumption of correctness a trial judge’s. conclusions of law or the incorrect application of law to the facts.’ Id.”
Fadalla v. Fadalla, 929 So.2d 429, 433 (Ala.2005). “Questions of law are reviewed de novo.” Alabama Republican Party v. McGinley, 893 So.2d 337, 342 (Ala.2004). See also Routzong v. Baker, 20 So.3d 802, 806 (Ala.Civ.App.2009) (“This court reviews de novo a trial court’s determination with respect to whether an agreement incorporated into a divorce judgment is ambiguous.”).

Discussion

Because the issues raised in the former husband’s appeal overlap, at times, with issues raised by the former wife in her cross-appeal, we will address the arguments raised by each party by issue and, when necessary, will discuss the arguments presented by both parties within the scope of each issue raised.
I. Ambiguity of Paragraph Five of the Modification Judgment
Because it affects our analysis of certain arguments presented by the parties on appeal, we will first consider the former wife’s argument that the trial court erred by concluding that paragraph five of the modification judgment was ambiguous.
“ ‘ “[A] settlement agreement which is incorporated into a divorce decree is in the nature of a contract.” Smith v. Smith, 568 So.2d 838, 839 (Ala.Civ.App.1990). A divorce judgment should be interpreted or construed as other written instruments are interpreted or construed. Sartin v. Sartin, 678 So.2d 1181 (Ala.Civ.App.1996). “The words of the agreement are to be given their ordinary meaning, and the intentions of the parties are to be derived from them.” Id., at 1183. Whether an agreement is ambiguous is a question of law for the trial court. Wimpee v. Wimpee, 641 So.2d 287 (Ala.Civ.App.1994). An agreement that by its terms is plain and free from ambiguity must be enforced as written. Jones v. Jones, 722 So.2d 768 (Ala.Civ.App.1998). An ambiguity exists if the agreement is susceptible to more than one meaning. Vainrib v. Downey, 565 So.2d 647 (Ala.Civ.App.1990). However, if only one reasonable meaning clearly emerges, then the agreement is unambiguous. Id, Finally, if a provision of an agreement is certain and clear, it is the duty of the trial court to determine its meaning, and the court’s determination is afforded a heavy presumption of correctness and will not be disturbed unless it is clearly erroneous. Id.’ ”
Routzong v. Baker, 20 So.3d at 806 (quoting R.G. v. G.G., 771 So.2d 490, 494 (Ala.Civ.App.2000)).
In its September 7, 2010, order, and later in the final judgment, the trial court found that paragraph five of the agreement incorporated into the modification judgment was vague, overly broad, and contained a latent ambiguity. Initially, we note that the former husband argued at trial, and maintains on appeal, that the divorce judgment and the modification judgment were overly broad and, thus, ambiguous because there were no provisions limiting the scope of the former husband’s postminority-educational-support *842 obligation. See generally Lindenmuth v. Lindenmuth, 66 So.3d 267, 272 (Ala.Civ.App.2010) (“In cases involving requests to establish or modify a postminority-support award governed by [Ex parte ] Bayliss, [550 So.2d 986 (Ala.1989) ], this court has held that a trial court must set reasonable limitations on the parent’s responsibility for postminority education support, because a failure to do so may impose an undue hardship on the paying parent.”). However, this court has held that “the principles of Ex parte Bayliss ... do not generally apply in the context of a parent’s contractual undertaking to provide postmi-nority support to minor children that is incorporated into a binding judgment.” Thomas v. Campbell, 960 So.2d 694, 697 (Ala.Civ.App.2006). Thus, the mere fact that, pursuant to the agreements incorporated into the divorce judgment and the modification judgment, the child could have attended any college, for any length of time, earning below-average grades, does not make the agreements' ambiguous.
The trial court found that the modification judgment contained a latent ambiguity, i.e., an ambiguity “that 'appear[s] only as the result of extrinsic or collateral evidence showing that a word, thought to have but one meaning, actually has two or more meanings.’ ” Meyer v. Meyer, 952 So.2d 384, 392 (Ala.Civ.App.2006) (quoting 11 Richard A. Lord, Williston on Contracts § 33:40 at 816 (4th ed.2003)).[2] Most of the evidence presented at the ore tenus hearings revolved around the meaning of the term “consult” in paragraph five of the modification judgment. The definitions of the term “consult” in Merriam-Webster’s Collegiate Dictionary 268 (11 ed.2003) include: “to have regard to”; “to ask the advice or opinion of’; “to refer to”; and “to deliberate together.” During the ore tenus hearings, the former husband repeatedly expressed that his interpretation of the term “consult” meant that he had to approve of the child’s college plans before he was legally obligated to pay his pro rata share of the child’s college expenses. Although paragraph four of the modification judgment requires the former husband’s approval of the child’s pre-high-school-graduation college expenses before he was required to contribute to those expenses, using the ordinary meaning of the term “consult,” there is no way to construe paragraph five as requiring the former husband’s approval of the child’s college plans before he was liable for his pro rata share of the child’s college expenses.
The record indicates that the former wife interpreted the term “consult” as requiring her and the child to keep the former husband aware of the child’s college-application process, college acceptances, and, eventually, her final decision. Although the record supports the conclusion that the former husband and the former wife had different interpretations of the word “consult,” such a conclusion does not render paragraph five of the modification judgment latently ambiguous. See Twin City Fire Ins. Co. v. Alfa Mut. Ins. Co., 817 So.2d 687, 692 (Ala.2001) (“The fact that the parties interpret the insurance policy[, which is governed by the rules of contracts,] differently does not make the insurance policy ambiguous.”); and Wayne J. Griffin Elec., Inc. v. Dunn Constr. Co., 622 So.2d 314, 317 (Ala.1993) (“The mere fact that the parties argue different constructions of the document does not force the conclusion that the disputed language is ambiguous.”). Accordingly, we cannot conclude that paragraph five of the modification judgment contains a latent ambiguity-
*843 II. Payment of Postminority-Child-Support Arrears
The former husband argues that the trial court erred by requiring him to pay 87% of the college expenses incurred by the child at the University of Texas from the fall 2009 semester through the time of the entry of the final judgment, i.e., the end of the fall 2010 semester, because, he asserts, such an order is financially oppressive and constitutes a financial hardship. In support of his argument, the former husband cites Thrasher v. Wilburn, 574 So.2d 839 (Ala.Civ.App.1990) (holding that, pursuant to Ex parte Bay-liss, when determining whether the parent should provide financial assistance to an adult child for college expenses, a trial court should consider whether the parent has sufficient estate, earning capacity, or income to provide financial assistance without undue hardship), and Eastis v. Bredehoft, 599 So.2d 58 (Ala.Civ.App.1992) (reversing an award of postminority support pursuant to Ex parte Bayliss because the judgment failed to set reasonable limitations on the father’s postminority-sup-port obligation). Both Thrasher and Eas-tis are distinguishable from the present case because they involve an initial award of postminority-educational support pursuant to Ex parte Bayliss. As we have already explained, the former husband failed to negotiate limitations on his obligation of postminority support in either the divorce judgment or the modification judgment — both which incorporated an agreement of the parties.
In violation of Rule 28(a)(10), Ala. R.App. P., the former husband fails to cite any authority to support a conclusion that the trial court erred by enforcing the plain terms of the agreements incorporated into the divorce judgment and the modification judgment and by declining to make the modification of his postminority-educational-support obligation retroactive to the date he filed his petition to modify that obligation. See generally Simpkins v. Simpkins, 595 So.2d 493 (Ala.Civ.App.1991) (when an agreement incorporated into the parties’ divorce judgment did not place any limitations of the father’s obligation to pay the daughter’s college expenses and otherwise did not require the father’s approval of the child’s choice of college and the father, based on his daughter’s choice of an expensive out-of-state college, failed to pay the full amount of college expenses that he had agreed to pay, this court affirmed a trial court’s judgment that ordered the father to pay postminority-educational-support arrears); Frasemer v. Frasemer, 578 So.2d 1346, 1349 (Ala.Civ.App.1991) (“Where the obligated parent has failed to make child support payments because of financial inability to do so, the trial court may properly find the parent not in contempt, ... but the trial court may not ‘forgive’ or set aside the accrued arrearage.”); but see Warren v. Warren, 94 So.3d 392, 395-96 (Ala.Civ.App.2012) (noting that any modification made to an award of postminority support may be made retroactive to the date that the petition to modify was filed). Accordingly, we will not address this argument further. See Asam v. Devereaux, 686 So.2d 1222, 1224 (Ala.Civ.App.1996) (holding that “[inapplicable general propositions are not supporting authority” and that an appellate court “will address only those issues properly presented and for which supporting authority has been cited” (emphasis added)). Therefore, we affirm the trial court’s judgment insofar as it ordered the former husband to pay post-minority-support arrears.
III. Modification of the Former Husband’s Postminority-Educational-Support Obligation
The former wife contends that the trial court erred by modifying the *844 terms of the former husband’s postminority-educational-support obligation based on a conclusion that the modification judgment contained a latent ambiguity. We agree. It is evident from our review of the record and the trial court’s judgment that the trial court’s basis for modifying the former husband’s postminority-educational-support obligation was its conclusion that paragraph five of the parties’ agreement incorporated into the modification judgment contained a latent ambiguity. Although we have concluded that paragraph five did not contain a latent ambiguity, even if we had determined that paragraph five contained a latent ambiguity, the existence of a latent ambiguity is not a valid basis for modifying the terms of an agreement. The presence of a latent ambiguity in an agreement allows a trial court only to look beyond the four corners of the agreement in an effort to interpret the agreement. See Judge v. Judge, 14 So.3d 162, 165-66 (Ala.Civ.App.2009) (citing Martin v. First Nat’l Bank of Mobile, 412 So.2d 250, 253 (Ala.1982)). Accordingly, we conclude that the trial court erred as a matter of law by modifying the former husband’s postminority-educational-sup-port obligation based on its conclusion that the modification judgment contained a latent ambiguity.
The former wife also argues that the trial court could not have modified the former husband’s postminority-edueational-support obligation based on a finding that there had been a material change in circumstances because, she argues, there was insufficient evidence to support such a finding. A finding of a material change in circumstances since the entry of the modification judgment is a valid legal basis for modifying the former husband’s postmi-nority-educational-support obligation. Although this court may affirm a trial court’s judgment on any valid legal ground presented by the record, even if it has not been considered by the trial court, see Liberty Nat’l Life Ins. Co. v. University of Alabama Health Servs. Found., P.C., 881 So.2d 1013, 1020 (Ala.2003), we cannot conclude that the former husband demonstrated, as a matter of law, that there had been a material change in circumstances since the entry of the modification judgment.
Furthermore, we cannot determine, from our review of the record, whether the trial court considered the former husband’s argument that there had been a material change in circumstances and rejected that argument because there was insufficient evidence or if the trial court failed to consider that argument after it determined that the former husband’s postminority-educational-support obligation was due to be modified based on the purported existence of a latent ambiguity. A determination of the existence of a material change in circumstances requires findings of fact that can be made only by a trial court. See J.C. v. State Dep’t of Human Res., 986 So.2d 1172,1184 (Ala.Civ.App.2007) (“[Ajppellate courts in this state generally do not review evidence in order to make factual conclusions; instead, they review judgments in order to determine whether the trial court committed reversible error. Because our appellate courts do not act as fact-finders, they do not utilize standards of proof but, instead, apply standards of appellate review.”). Accordingly, we reverse the trial court’s judgment, insofar as it modified the former husband’s postminority-support obligation on the ground that a latent ambiguity existed in the modification judgment, and we remand the cause with instructions to the trial court to enter a judgment specifically ruling on the former husband’s request to modify his postminority-edu-cational-support obligation based on a ma *845 terial change in circumstances since the entry of the modification judgment.
IV. Limitations on the Former Husband’s Prospective Postminority-Support Obligation
The former husband also argues that the trial court erred by failing to set reasonable limitations on his prospective post-minority-support obligation once the trial court modified his obligation. In light of our conclusion in Part III of this opinion, we pretermit discussion of this issue.
V. Attorney Fees
The husband argues that the trial court erred by ordering him to contribute $1,000 toward the former wife’s attorney’s fees because the trial court did not hold him in contempt for violating the divorce judgment or the modification judgment. See Sosebee v. Sosebee, 896 So.2d 557, 564 (Ala.Civ.App.2004) (“We agree that § 30-2-54[, Ala.Code 1975,] precludes the award of an attorney fee to the petitioner in a contempt action when the trial court fails to make a finding of contempt against the defending party.”). It is undisputed by the parties in their briefs on appeal that the trial court determined that the former husband was not in contempt. The former husband further argues that the trial court had no other grounds for awarding the former wife an attorney fee.
However, the former wife argues that, despite the fact the trial court did not find the former husband in contempt, she was entitled to an award of attorney fees because paragraph 10 of the divorce judgment, quoted above, required the trial court to award her attorney fees. See State Dep’t of Human Res. v. Estate of Harris, 857 So.2d 818, 820 (Ala.Civ.App.2002) (in Alabama, an attorney fee may be recovered if a fee is allowed by statute, by the terms of a contract, or by a special equity). To determine whether the trial court appropriately awarded to the former wife a portion of her attorney fees, and to determine whether the trial court erred by failing to award the former wife a greater award of attorney fees, we must determine whether paragraph 10 of the divorce judgment allows an award of attorney fees without a specific finding that the former husband was in contempt.
Paragraph 10 provides that the former wife “shall be entitled to reimbursement of ... her attorney’s fees and other costs” if the former husband “fail[ed] to abide by the terms of [the] agreement [incorporated into the divorce judgment] or [if] he [took] some action which amount[ed] to contempt of court, and it [became] necessary for the [former wife] to seek the relief of the court to enforce ... her rights under this agreement. ...” (Emphasis added.) It is clear that the trial court determined that the former husband had “fail[ed] to abide by the terms of [the] agreement” incorporated into the parties’ divorce judgment. The plain terms of the divorce judgment required the former husband to contribute a pro rata share of the child’s college expenses, without limitation. It is undisputed that the former husband did not do so. Because paragraph 10 uses the conjunction “or,” the agreement does not require the former husband to, in addition to failing to abide by the terms of the agreement, “take some action which amounts to a contempt.” Furthermore, because paragraph 10 of the divorce judgment then uses the conjunction “and,” the former wife would be entitled to reimbursement of her attorney fees and costs only if “it became necessary for the [former wife] to seek the relief of the court to enforce ... her rights under the agreement.” The record clearly demonstrates that the former wife was required to hire an attorney and seek relief in the trial court as a result of the former husband’s failure to abide by the *846 plain terms of the parties’ agreement as incorporated into the divorce judgment. Accordingly, we conclude that the plain language of paragraph 10 does not require that the trial court find the former husband in contempt before the former wife is “entitled to reimbursement of ... her attorney’s fees and other costs.”
In her cross-appeal, the former wife argues that the trial court erred by failing to award her a greater amount of attorney fees. We agree. The former wife presented evidence indicating that she had incurred attorney fees totaling $18,213.97. Although the trial court could have concluded that only a portion of the attorney fees incurred by the former wife were based on the former wife’s attempt to enforce the terms of the agreement incorporated into the divorce judgment, we cannot conclude that it was reasonable to determine that the former wife’s attorney fees related to her enforcement action amount to only $1,000 when more than $18,000 in attorney fees were incurred. Accordingly, we reverse the trial court’s judgment insofar as it awarded the wife an attorney fee in the amount of $1,000, and we remand the cause with instructions to the trial court to determine a more reasonable award of attorney fees based on the plain language of paragraph 10 of the agreement incorporated into the parties’ divorce judgment.[3]

Conclusion

The trial court’s judgment is reversed insofar as it prospectively modified the former husband’s postminority-educational-support obligation based on a finding of a latent ambiguity and insofar as it awarded the former wife an attorney fee in the amount of $1,000. The cause is remanded with instructions to the trial court to enter a judgment consistent with this opinion. The trial court’s judgment, in all other respects, is affirmed.
The former wife’s request for an attorney fee on appeal is granted in the amount of $1,500.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., and PITTMAN and MOORE, JJ., concur.
THOMAS, J., concurs in the result, without writing.

. The former wife subsequently filed two amended petitions seeking to hold the former husband in contempt for various violations of the trial court's previous judgments. However, those issues were resolved and are not pertinent to the issues raised on appeal.

. For purposes of comparison, we note that a patent ambiguity is an ambiguity that is "apparent upon the face of the instrument, arising by reason of inconsistency or uncertainty in the language employed.” Meyer v. Meyer, 952 So.2d at 391.

. Although the parties' agreement does not specifically limit the award of attorney fees recoverable by the former wife to a "reasonable” amount, "Alabama law reads into every agreement allowing for the recovery of attorney’s fees a reasonableness limitation.” Willow Lake Residential Ass’n, Inc. v. Juliano, 80 So.3d 226, 241 (Ala.Civ.App.2010) (quoting Alabama Educ. Ass'n v. Black, 752 So.2d 514, 519 (Ala.Civ.App.1999)) ("'In Alabama, where there is an agreement to pay an attorney fee and the agreement does not speak specifically to the reasonableness of the fee, a "reasonable” fee will be inferred.’ ”).