Rel: December 1, 2023

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2023-2024

———————————————

### CL-2022-1025

———————————————

### J.C.

### v.

### G.T.C.

**Appeal from Shelby Circuit Court**
**(DR-18-900104.01)**

PER CURIAM.

J.C. ("the mother") appeals from a judgment entered by the Shelby Circuit Court ("the trial court"). We affirm the trial court's judgment in part, reverse it in part, and remand the case with instructions.

Background

The mother and G.T.C. ("the father") married on November 9, 2008. Two children were born of the marriage: a son, who was born on May 30,

2012, and a daughter, who was born on July 7, 2014. Both before and during the marriage, the parties experienced problems in their relationship stemming from the father's excessive use of pornography. In the fall of 2015, while undergoing treatment for his problem with pornography, which a counselor identified as a sexual addiction, the father experienced a "triggered or hyper-focused" sensation as he was applying diaper cream to the daughter's private area on two separate occasions. On December 31, 2015, the father disclosed those incidents to the mother, who immediately evicted the father from the family's home. Although no criminal charges were brought against the father related to his disclosures, the Department of Human Resources found that the father was "indicated" for sexual abuse/molestation against the daughter after conducting an investigation. See Ala. Code 1975, § 26-14-8(a)(1) (defining "indicated" to mean "[w]hen credible evidence and professional judgment substantiates that an alleged perpetrator is responsible for child abuse or neglect").

After three years of informal separation, the parties were divorced by a judgment entered by the trial court on January 3, 2019; that judgment incorporated an agreement of the parties. Pursuant to the

agreement, the mother received sole legal and sole physical custody of the children, subject to visitation by the father, which was to take place solely at the mother's discretion. The father agreed that he would attend therapy with a therapist chosen by the mother, that he would allow the mother to speak openly with his therapist, and that he would submit to polygraphs and drug testing at the mother's discretion. The father also agreed that he would pay child support in the amount of $8,500 per month and that he would be eligible for visitation with the children only by remaining current on his monthly child-support obligation. In addition, the father agreed to pay for any costs incurred in the event that the children attended private school, to pay for the children's health-insurance and medical expenses, to pay for the children's postminority-educational expenses, to relinquish his right to object in the event that the mother requested to relocate with the children, to convey his interest in the marital residence to the mother, and to pay for any "major" repairs necessary to maintain the marital residence while the mother continued to reside therein.

On July 10, 2020, the father filed a petition seeking a modification of the divorce judgment. The father later filed a motion seeking pendente

lite relief in which he requested a reduction of his child-support obligation and the establishment of a pendente lite schedule of visitation between him and the children. On March 5, 2021, the trial court entered a pendente lite order that incorporated an agreement of the parties; in pertinent part, that order appointed Caroline Taylor "as a Family Reunification Specialist to counsel [the] father, the minor children, and [the] mother, as needed, in the reunification process." Specifically, Taylor was directed to "facilitate the reunification of [the] father and the ... children" and to "recommend a reunification plan," which was to "include communication and visitation between the father and the ... children as [Taylor], in her discretion, deem[ed] appropriate." The parties were directed to follow Taylor's recommendations, and the father was directed to be responsible for the payment of Taylor's services. The order included a procedure for complaints or grievances from either party regarding Taylor's performance. Additionally, the pendente lite order reduced the father's child-support obligation to $6,000 per month during the pendency of the father's modification petition.

On January 4, 2022, the father filed a motion to show cause and for a modification of the terms of the pendente lite order. He asserted,

among other things, that the mother had failed to follow Taylor's recommendations in violation of the pendente lite order, and he requested a schedule of visitation between him and the children, sanctions against the mother, and an award of attorney fees. Following a trial on May 24 and 25, 2022, the trial court entered, on June 30, 2022, a final judgment granting the father's modification petition in part and denying it in part. With regard to visitation between the father and the children, that judgment provides, in pertinent part:

> "2. [The father] shall be entitled to visitation with the ... children as hereinafter set forth, supervised by one of the following people: Tonya Broncato, [the father's] mother, [the father's] sister, [the father's] aunt, or any other supervisor agreed upon by both parties. Unless agreed to by the parties or ordered by the court, all visitations shall be supervised.
>
> "....
>
> "7. <u>Phase 1</u> (3 months): [The father] shall have one in-person visit with the ... children each week. The in-person visits shall occur on the 1st, 3rd, and 5th Saturday and the 2nd and 4th Sunday of each month. These phase 1 visitations shall take place at a public place agreed upon between the parties. Should the parties be unable to agree upon a location, then they shall take place at a public location of the [father's] choosing where previous visitations have occurred. The in-person visits shall be for a period of 2.5 consecutive hours. Phase 1 shall last for three (3) months following the date of entry of this order. Upon the expiration of three (3) months, Phase 2 shall immediately begin.

"8. <u>Phase 2</u> (3 months): [The father] shall have one in-person visit with the ... children each week. The in-person visits shall occur on the 1st, 3rd, and 5th Saturday and the 2nd and 4th Sunday of each month. The in-person visits shall be for a period of 4 consecutive hours. Phase 2 shall last for three (3) months following the date of entry of this order. Upon the expiration of three (3) months, Phase 3 shall immediately begin.

"9. <u>Phase 3</u> (3 months): [The father] shall be entitled to in-person visitation with the ... children for six (6) hours each 1st, 3rd, and 5th Saturday. [The father] shall also be entitled to one in-person visit with the ... children for a period of two (2) hours on the 1st and 3rd Thursday. Phase 3 shall last for three (3) months following the date of entry of this order. Upon expiration of three (3) months, the Phase 4 schedule shall immediately begin.

"10. <u>Phase 4</u> (12 months): [The father] shall be entitled to in-person visitation with the ... children for six (6) hours each 1st, 3rd, and 5th Saturday and Sunday. [The father] shall also be entitled to one in-person visit with the ... children for a period of two (2) hours on the 1st and 3rd Thursday. Phase 4 shall last for one (1) year. Upon the expiration of Phase 4, the Permanent Schedule shall immediately begin.

"11. <u>Permanent</u>: [The father] shall be entitled to in-person visitation with the ... children each 1st, 3rd, and 5th weekend from Friday at 6:00 p.m. until Sunday at 6:00 p.m. [The father's] overnight visits shall be supervised by either his mother, his sister, his aunt, or a supervisor agreed upon by the parties."

In addition to those specified visitation times, the trial court also awarded the father specified visitation on certain holidays and on other special occasions that would suspend the regular "phase" visitations. It

6

directed further that, "[p]rior to exercising any overnight supervised visitation, [the father] shall secure a residence without a roommate." The judgment directed the father to continue participating in mental-health counseling and to follow his counselor's recommendations regarding treatment, frequency of visits, medication, "and the like."

The trial court's judgment reduced the father's child-support obligation to $4,500 per month; modified that portion of the divorce judgment related to the father's obligation to pay for the cost of the children's private school to direct that both parties equally bear the costs of private school if the children were enrolled therein; modified that portion of the divorce judgment requiring the father to pay for the children's postminority-educational expenses to direct that the father pay no more than half of any such expenses; modified the provision of the divorce judgment requiring the father to pay for repairs to the marital residence to require him to pay for only half of any such repairs; and modified the provision requiring the father to maintain a life-insurance policy, so that that obligation would terminate when the children reach the age of majority, among other terminating circumstances. The judgment granted the father's motion to show cause, finding the mother

7

in contempt for her failure to comply with the pendente lite order, and it ordered the mother to pay $1,000 to the father as reimbursement for his attorney fees incurred in filing and litigating his motion to show cause. The trial court denied all other relief requested by either party that was not addressed in the judgment.

The mother filed a postjudgment motion on August 1, 2022; the trial court denied that motion on August 15, 2022. The mother timely filed her notice of appeal to this court on September 26, 2022, and she filed an amended notice of appeal on that same date. This court conducted oral argument on August 9, 2023.[1]

Analysis

I. Visitation

The mother first argues that the trial court exceeded its discretion in the way that it modified the visitation provisions of the divorce judgment.

> "Visitation is a matter within the discretion of the trial court. E.W. v. Montgomery County Dep't of Human Resources, 602 So. 2d 428 (Ala. Civ. App. 1992). The court's discretion is guided by what will protect and enhance the best interests and welfare of the child. Id. The court's decision

---

[1]Although Presiding Judge Thompson did not attend oral argument in this case, he has viewed a video recording of that oral argument.

8

regarding visitation will not be reversed absent an abuse of discretion or a showing that it is plainly in error. Id."

Hall v. Hall, 717 So. 2d 416, 417 (Ala. Civ. App. 1998). The mother contends that the trial court exceeded its discretion in awarding the father graduated visitation culminating in overnight supervision at the end of one year because, the mother argues, the trial court received no evidence indicating that such visitation would protect and enhance the best interests and welfare of the children.

In Fanning v. Fanning, 504 So. 2d 737 (Ala. Civ. App. 1987), and Carr v. Broyles, 652 So. 2d 299, 304 (Ala. Civ. App. 1994), this court approved of graduated-visitation schedules designed to allow a noncustodial parent to become reacquainted with the children in those cases. Unlike Fanning and Carr, this case involves visitation between minor children and a sex-addicted father. At the time of trial, the father apparently appeared to the trial court to be in remission from his sexual addiction so that he could safely visit with the children under supervision; however, the evidence clearly establishes that the father has repeatedly relapsed. The uncontradicted testimony of the mother shows that the father claimed several times to have overcome his sexual addiction only to resume his habits, even when he was undergoing

9

counseling. In fact, the father last succumbed to his desire to view pornography while the case was pending and after the father had been awarded pendente lite visitation with the children. One counselor testified that, despite intensive therapy over many years, the father remained a sex addict, and another counselor testified that no expert could testify that the father would not sexually abuse the children again. The evidence in the record clearly shows that the circumstances existing at the time of trial were subject to change in the future. Nevertheless, the judgment calls for the visitation periods to gradually increase over time and ultimately provides that the father will have "permanent" overnight supervision after one year.

The mother argues that a trial court may not automatically escalate visitation based on speculation as to future circumstances when those circumstances may not be in the best interests of the children. In Long v. Long, 781 So. 2d 225 (Ala. Civ. App. 2000), this court reversed a modification judgment providing for an automatic modification of visitation after six months from supervised to unsupervised; we noted that,

> "[i]n its judgment, the trial court did not impose any conditions or obligations for the mother to fulfill during the

six months. The trial court simply provided that after six months the visitation would be modified from supervised visitation to unsupervised visitation, including overnight unsupervised visitation."

781 So. 2d at 227. This court held that a trial court may not automatically modify visitation when there is "no basis to determine future events." Id. The mother in the present case maintains that the graduated-visitation provision included in the trial court's judgment should be vacated because it is based entirely on speculation as to future circumstances. We agree.

The judgment requires the father to continue his counseling and to follow the guidance of his counselors, but the judgment provides for automatic escalation of the visitation periods regardless of the condition of the father or the progress of his recovery at that time. In light of the evidence in the record, the trial judge could not possibly know whether future circumstances would support a determination that increased and overnight supervised visitation that would expose the children to more extensive contact with the father would be in the best interests of the children. See Long, supra. We, therefore, conclude that the judgment violates Alabama law by allowing the father to engage in increasing visitation over time and to engage in overnight visitation at the end of

11

one year, based on the sole condition that the father has secured a residence without a roommate by that time.

We therefore reverse the trial court's judgment awarding the father graduated-supervised visitation, and we remand the case for the trial court to enter a supervised-visitation schedule based solely on current circumstances. Given the length of time that this appeal has been pending, we authorize the trial court to take additional evidence, if deemed necessary, to ascertain the supervised-visitation schedule that currently serves the best interests of the children.

## II. Contempt

The mother next argues that the trial court erred in finding her in contempt.

> "'Absent an abuse of discretion, or unless the judgment of the trial court is unsupported by the evidence so as to be plainly and palpably wrong, the determination of whether a party is in contempt is within the sound discretion of the trial court.' Shonkwiler v. Kriska, 780 So. 2d 703, 706 (Ala. Civ. App. 2000) (citing Shellhouse v. Bentley, 690 So. 2d 401 (Ala. Civ. App. 1997)). In order to find [a party] guilty of contempt under either Rule 70A(a)(2)(C)(ii) (criminal contempt) or Rule 70A(a)(2)(D) (civil contempt), Ala. R. Civ. P., [a] trial court would have ... to determine that the [party] had willfully failed or refused to comply with a court order. See T.L.D. v. C.G., 849 So. 2d 200, 205 (Ala. Civ. App. 2002)."

Carnes v. Carnes, 82 So. 3d 704, 715 (Ala. Civ. App. 2011).

12

The record on appeal indicates that the mother had failed to comply with Taylor's recommendations to increase the frequency and duration of the father's visits between the time her initial counsel filed a motion to withdraw on October 5, 2021, and the time she retained new counsel on January 6, 2022. The evidence also indicates that, in late March or early April 2022, Taylor had requested that the parties sign updated intake and consent paperwork, that the mother had refused to sign that paperwork based on her concerns that it modified the terms of Taylor's payment provisions as outlined in the pendente lite order, and that, since that time, the mother had declined to allow visitation or videoconferencing calls between the father and the children, despite her having previously complied with those communications according to Taylor's recommendations.

The mother argues on appeal that her failure to comply with Taylor's recommendations was not willful, that she had complied with the grievance process outlined in the pendente lite order to challenge Taylor's suggestions regarding the father's visitation with the children, and that the trial court exceeded its discretion by holding her in contempt. The mother testified that she had not allowed

13

videoconferencing calls between the father and the children during the resolution of her conflict with Taylor because, she said, it was her understanding that those calls were tied to the visitation, but also because the children did not like participating in the calls and she thought that the calls would be difficult for them. The trial court could have considered the mother's failure to obtain new counsel for a three-month period, during which she failed to follow Taylor's recommendations to increase the father's visitation periods with the children, and the mother's refusal to allow visitation and videoconferencing calls between the father and the children in the weeks leading up to the trial, combined with her failure to file a motion related to the contractual dispute with Taylor and the mother's testimony indicating that she did not desire to co-parent the children with the father, as evidence supporting its conclusion that the mother's failure to comply with the pendente lite order was willful. Accordingly, the trial court's finding of contempt against the mother is affirmed.

## III.  Support Obligations

We next consider the mother's arguments related to the father's support obligations. The mother first asserts that the trial court abused

its discretion in modifying the father's child-support obligation and his obligation to pay private-school tuition for the children, which was classified as additional child support.

> "An award of child support may be modified only upon proof of a material change of circumstances that is substantial and continuing. Browning v. Browning, 626 So. 2d 649 (Ala. Civ. App. 1993).  The parent seeking the modification bears the burden of proof. Cunningham v. Cunningham, 641 So. 2d 807 (Ala. Civ. App. 1994). Whether circumstances justifying modification of support exist is a matter within the trial court's discretion. Id.  We will not disturb the trial court's decision on appeal unless there is a showing that the trial court abused that discretion or that the judgment is plainly and palpably wrong. Id.; Douglass v. Douglass, 669 So. 2d 928, 930 (Ala. Civ. App. 1995)."

Romano v. Romano, 703 So. 2d 374, 375 (Ala. Civ. App. 1997).

The father testified that his adjusted gross income totaled $193,129 in 2018, the year that the parties entered into the agreement that was incorporated into the divorce judgment.  He stated that his income had decreased after the divorce was finalized; that he had incurred almost $100,000 in debt to stay current with his support obligations; and that he had filed for bankruptcy in October 2020.  The father testified that he had seen an increase in his income since that time but, he said, his income fluctuates substantially, and his budget did not include any savings.  He submitted as an exhibit a monthly budget, which indicates

that the father's salary for 2021 totaled $170,786.68 and that he has a monthly budget deficit in the amount of $3,223. The trial court determined that a material change in circumstances had occurred since the entry of the divorce judgment based on the father's testimony indicating that he had incurred significant debt for the purpose of meeting his child-support obligation and that his employment income had decreased and on the mother's testimony indicating that she had secured a part-time job but that she continued to homeschool the children rather than work full time.

The mother argues on appeal that the trial court erred in reducing the father's child-support obligation because his yearly income had only slightly decreased and there was no indication that the children's needs had changed. We cannot conclude, however, that the trial court abused its discretion in reducing the father's child-support obligation in light of the evidence indicating that, to meet the obligations assumed by the father in the divorce judgment, he had been required to incur large amounts of debt, which had, in turn, led to his filing for bankruptcy. Moreover, the trial court awarded child support in an amount that exceeds the amount recommended by the application of the child-support

16

guidelines. See Rule 32, Ala. R. Jud. Admin. Accordingly, the trial court's modification of the father's child-support obligation is affirmed.

Because the father's obligation to pay for the children's private-school tuition was classified as an additional child-support award, the modification of that obligation is also affirmed in light of the evidence indicating that the father's ability to pay those amounts had changed. To the extent the mother argues that the modification of the father's obligation to pay for the children's private-school tuition was not ripe for adjudication, the mother has failed to provide any citation to authority in support of that argument in violation of Rule 28(a)(10), Ala. R. App. P., and, thus, we decline to consider that argument.

The mother next argues that the trial court erred in modifying the father's obligation to pay for the entirety of the children's postminority-educational expenses. "A finding of a material change in circumstances since the entry of the modification judgment is a valid legal basis for modifying [the father's] postminority-educational-support obligation." Gore v. White, 96 So. 3d 834, 844 (Ala. Civ. App. 2012). As discussed above, the trial court's determination that a material change in circumstances had occurred is supported by the evidence presented. The

mother again argues that this issue was not ripe for the trial court's consideration; however, she fails to cite any authority in support of that argument, and, thus, we decline to consider the same. See Rule 28(a)(10).

We next consider the mother's argument that the trial court erred in modifying the father's responsibility to pay for "major" repairs necessary to maintain the marital residence. To the extent she argues that that provision of the divorce judgment was in the nature of a property settlement, rather than a modifiable support award, we note that, in Segers v. Segers, 655 So. 2d 1014, 1016 (Ala. Civ. App. 1995), this court stated that, "[f]or an award to constitute a property settlement, at least two requirements must be met: (1) the amount and time of payment must be certain; and (2) the right to the payment must be vested and not subject to modification. Daniels v. Daniels, 599 So. 2d 1208 (Ala. Civ. App. 1992)." In this case, the provision of the divorce judgment requiring the father to pay for major repairs to the marital residence meets neither of those requirements. The amount of and time of payment for the repairs are unspecified, and the obligation is ongoing and directed to repairs that arise "for so long as the [mother] resides" in the marital residence. Accordingly, the trial court did not err in categorizing the

18

repair requirements as a modifiable-support award rather than a property settlement. Because we have already determined that the trial court did not err in concluding that a material change of circumstances had occurred regarding the father's ability to pay the financial obligations outlined in the divorce judgment, we conclude that the modification of the father's obligation to pay for the repairs to the marital residence did not amount to an abuse of discretion.

## IV. Attorney's Fees

The mother last argues that the trial court erred in declining to award her an attorney fee as requested. In Glover v. Glover, 678 So. 2d 174, 176 (Ala. Civ. App. 1996), this court stated, in pertinent part:

> "Whether to award an attorney fee in a domestic relations case is within the sound discretion of the trial court and, absent an abuse of that discretion, its ruling on that question will not be reversed. Thompson v. Thompson, 650 So. 2d 928 (Ala. Civ. App. 1994). 'Factors to be considered by the trial court when awarding such fees include the financial circumstances of the parties, the parties' conduct, the results of the litigation, and, where appropriate, the trial court's knowledge and experience as to the value of the services performed by the attorney.' Figures v. Figures, 624 So. 2d 188, 191 (Ala. Civ. App. 1993)."

In the present case, in consideration of the mother's contemptuous conduct, the father's general success on the merits of his petition, and the

19

award of child support to the mother exceeding the amount recommended by the child-support guidelines, we cannot conclude that the trial court erred in declining to award an attorney fee to the mother.

Conclusion

We reverse those portions of the trial court's judgment related to the father's modified visitation schedule with the children and remand the case for the entry of a judgment consistent with this opinion. We otherwise affirm the judgment.

The mother's request for an award of an attorney fee on appeal is denied.

AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.

Thompson, P.J., and Moore and Hanson, JJ., concur.

Edwards and Fridy, JJ., concur in the result, without opinions.